**STATE**

v.

**Tony E. LEMON.**

**No. 84–142–C.A.**

Supreme Court of Rhode Island.

Aug. 20, 1985.

Arlene Violet, Atty. Gen., Timothy Conlon, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Janice M. Weisfeld, Asst. Public Defenders, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of conviction finding the defendant guilty of four counts charging him with (1) assault with intent to rob, (2) assault with intent to murder, (3) assault with a dangerous weapon, and (4) carrying a pistol without a license. Count 5 of the indictment resulted in a judgment of acquittal by the trial justice and count 6 was severed prior to trial. Thus, we are concerned only with the first four counts upon which a judgment of conviction was rendered pursuant to guilty verdicts returned by the jury November 28, 1983. The trial justice denied a motion for new trial and sentenced the defendant to consecutive terms of twenty years each on counts 1 and 2, ten years on count 3, and five years on count 4. From the judgment of conviction the defendant filed a timely appeal. We affirm. The facts of the case are as follows.

On May 5, 1982, the manager of a Kentucky Fried Chicken establishment on North Main Street in the city of Providence was confronted by a man who brandished a gun at him and his fellow employees. The manager, Ricky G. Dawkins (Dawkins), who was talking on the telephone, was ordered by the gunman to hang up the telephone. When Dawkins did not comply with sufficient speed, the gunman knocked the phone from his hand and ordered Dawkins to open the safe. The other employees meanwhile were lying or kneeling on the floor as ordered. Dawkins told the robber that because the safe was on a night lock, he could not open it. Thereupon, the robber fired a shot into a large freezer that was positioned behind Dawkins and stated that "the next one" would go into him.

Dawkins, apparently believing the gun was loaded with blanks, struggled with the robber briefly and attempted to flee out the door. The assailant then fired two or three shots. The first of the shots struck Dawkins in the leg. As Dawkins attempted to make his way over the body of one of the employees who was kneeling on the floor, the gunman fired again missing Dawkins but the bullet was imbedded in an ice box located nearby.

In support of his appeal, defendant raises four issues. These issues will be dealt with in the order in which they were presented in defendant's brief. Additional facts will be supplied as necessary to provide the appropriate context.

## I

### THE MOTION TO SUPPRESS IDENTIFICATION TESTIMONY

Shortly after the robbery, Dawkins was taken to the Miriam Hospital for treatment of his gunshot wound. The next morning, May 6, 1982, Detective John A. McCaughey (McCaughey) showed Dawkins an array of six photographs. Dawkins examined the photographs and selected a picture of defendant, Tony E. Lemon (Lemon), identifying Lemon as the robber. Both Dawkins and McCaughey testified without equivocation that no suggestion was made to Dawkins concerning which of the photographs was that of the assailant. These pictures were Polaroid black-and-white photographs approximately five inches by eight inches in size.

Dawkins corroborated McCaughey's testimony by identifying at trial the array of six Polaroid pictures that he had initialed. Dawkins also testified on cross-examination that on the night of the robbery he had been shown the same array of photographs by a detective whose name he could not recall and that he had, on that occasion, selected defendant's picture without any suggestion. He was then transported by the fire department rescue vehicle to Miriam Hospital.

The trial justice questioned whether the first photographic array was shown to Dawkins but, in any event, made the following finding of fact:

"In all of those cases [referring to prior decisions of this court and of the Supreme Court of the United States] what is prohibited is a suggested identification or an identification that is hedged with hints and direction from the police. We don't have that here. The State's burden is to show by clear and convincing evidence that the identification made by the victim of the defendant is an untainted identification—untainted by suggestion or anything of that nature. And I'm satisfied here that the State has more than met its burden of proof. I'm satisfied here by more than the required clear and convincin [sic] evidence that the identification made by the victim of this defendant is one that is based upon his independent recollection, aside from the viewing of the photographs * * * [a]nd accordingly, I see no reason here to conclude in any way, shape or fashion, that the identification made is in any way caused by anything that the officers did, or said, and for that reason, the defendant's motion to suppress is denied."

■ The defendant argues that the trial justice's comment concerning the independent source was irrelevant and that it caused the trial justice not to make any findings concerning the pretrial photographic array. We agree that the statement of the trial justice about an independent source was irrelevant and would only become pertinent in the event that the trial justice found that the photographic array or arrays were suggestive. Only then would the independent-source rule become relevant as it would relate to an in-court identification. *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). The defendant further points out correctly that a photographic array or a pretrial identification that is relied upon by the prosecution at trial prevents application of the independent-source rule. *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977). However, these arguments, although based on correct legal principles, completely ignore the finding of the trial justice in this case. That finding

clearly and succinctly states that the prosecution proved by clear and convincing evidence that there was no suggestiveness in any action by police officers in respect to the photographic array presented either on May 5, 1982 (assuming that such a presentation took place), or on May 6, 1982. Counsel for defendant relies on certain inconsistencies in the recollection of the victim, but these inconsistencies did not impress the trial justice in his clear and definite finding of fact. As we stated in another case involving this same defendant, the finding by the trial justice that there was no suggestiveness in the photographic array or arrays satisfies the first step in the analysis required by *Manson v. Brathwaite,* 432 U.S. 98, 107–14, 97 S.Ct. 2243, 2249–53, 53 L.Ed.2d 140, 149–54 (1977). *See State v. Lemon,* —— R.I. ——, ——, 478 A.2d 175, 178 (1984). Therefore, it was unnecessary for the trial justice even to consider the independent-source rule. His reference to that rule may be regarded as mere surplusage unnecessary to his decision on the motion to suppress.

■ An examination of the record in the case discloses overwhelming evidence in support of the trial justice's finding of no suggestivity. The conjecture raised by defendant regarding the first photographic array shown to defendant by an unknown detective is wholly insufficient to vitiate or diminish the trial justice's finding. Consequently, there was no error in the trial justice's denial of the motion to suppress the pretrial identification based upon photographic presentation.

## II

### THE REFUSAL TO INSTRUCT ON A LESSER–INCLUDED OFFENSE IN RESPECT TO THE CHARGE OF ASSAULT WITH INTENT TO MURDER

■ The defendant advances the argument that he was entitled to an instruction by the trial justice in respect to the charge of assault with intent to murder, that the jury could in the alternative return a verdict of assault with a dangerous weapon as a lesser-included offense. This court has

frequently asserted the general principle that a trial justice should instruct the jury on a lesser-included offense upon which a finding is warranted by the evidence. *See, e.g., State v. Kaner,* — R.I. —, 463 A.2d 1348 (1983); *State v. Infantolino,* 116 R.I. 303, 355 A.2d 722 (1976); *State v. Goff,* 107 R.I. 331, 267 A.2d 686 (1970). This rule is in accord with the rule promulgated on the Eighth Amendment and due-process grounds in respect to capital cases by the Supreme Court of the United States. *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

■ In the case at bar, as in the cited cases, it is necessary to examine the evidence in order to determine whether a charge on a lesser-included offense is warranted by the evidence. The undisputed evidence in the instant case shows that the gunman fired a shot into a large freezer and then stated to Dawkins that "the next one" would go into him. Thereafter as Dawkins, after a brief struggle, sought to flee, the gunman fired several shots, the first of which struck Dawkins in the leg. This scenario would certainly render irrational a finding that there was no intent to murder or to cause the victim grievous bodily harm when the shots were fired. In order to find that the gunman's act was merely negligent or unintentional would be to rely upon a type of conjecture that would fly in the fact of common sense. Such conjecture could scarcely be said to be warranted by the evidence in this case. Consequently, the trial justice committed no error when he declined this requested instruction in respect to the charge of assault with intent to murder.

## III

### THE DENIAL OF DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON THE CHARGE OF ASSAULT WITH A DANGEROUS WEAPON

■ The standard to be applied in respect to a motion for judgment of acquittal has often been stated. The trial justice must consider only that evidence which the prosecution claims is capable of generating proof beyond a reasonable doubt. Such evidence is to be viewed in the light most favorable to the state, and the trial justice must draw therefrom all reasonable inferences that are consistent with the guilt of the accused. Neither the weight of the evidence nor the credibility of the witnesses may be considered in passing upon such a motion. *State v. Romano,* — R.I. —, —, 456 A.2d 746, 756–57 (1983); *State v. Dionne,* — R.I. —, —, 442 A.2d 876, 883 (1982).

■ With this standard in mind, let us examine the evidence in the case at bar. Although the assailant's presence in the Kentucky Fried Chicken establishment was relatively brief, there was time for him to perform several acts, each one of which might be said to have had independent significance. The assault with intent to murder was clearly committed while the victim attempted to flee. Prior to this point, however, the gunman brandished a pistol at the victim and ordered him to open the safe. When he did not do so, the robber fired a shot into the freezer in order to intimidate the victim. Viewed in the light most favorable to the state, this act could be determined by a reasonable trier of fact to have constituted an assault with a dangerous weapon that was designed to place the victim in fear of imminent bodily harm unless he acceded to the demands of the robber.

■ In answer to the double-jeopardy argument of defendant concerning whether this assault with a dangerous weapon might not be identical to the crime of assault with intent to rob and assault with intent to murder, the following comments may be appropriate. A rational jury could well find that at the time defendant fired a shot into the freezer, he did so not with the intent to murder the victim but

solely intending to put him in fear. This act taken by itself could certainly support a finding of assault with a dangerous weapon. The defendant further argues that the assault with a dangerous weapon in this instance was clearly carried out with the intent to rob. It is, of course, a familiar doctrine that several crimes may be committed as part of one transaction. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In determining when a single act may violate two separate statutes or constitute two distinct crimes, the test has traditionally been whether each offense requires proof of a fact that the other does not. *Id.* We considered the application of that doctrine rather carefully in *State v. Pope*, —— R.I. ——, ——, 414 A.2d 781, 788 (1980), in respect to the elements of extortion and assault with intent to rob. In that case we determined that neither offense required proof of a fact that the other did not.

On the contrary, in the case at bar the offense of assault with intent to rob requires the finding that the accused intended the " 'felonious and forcible taking from the person of another of goods or money to any value by violence or putting him in fear.' " *State v. Reposa*, 99 R.I. 147, 149, 206 A.2d 213, 215 (1965) (quoting 4 W. Blackstone, Commentaries 241 (1896)). Consequently, the charge of assault with intent to rob required proof of a significant additional set of facts that the charge of assault with a dangerous weapon did not.[1] Thus, the holding in *Pope, supra,* is of no assistance to defendant in this case. The trial justice committed no error in denying defendant's motion for judgment of acquittal on the charge of assault with a dangerous weapon.

IV

## THE ADMISSION OF THE TESTIMONY OF RUSSELL COATES REGARDING A PREVIOUS ROBBERY IN THE SAME KENTUCKY FRIED CHICKEN RESTAURANT

At the conclusion of the state's presentation of evidence, defendant took the stand and testified that he had not committed the offenses with which he was charged. He further testified that he had been in Boston from April 16 to May 30, 1982, and was not therefore in the city of Providence on the date of this incident, namely, May 5, 1982. He further asserted that he had never been on the premises of the Kentucky Fried Chicken restaurant on North Main Street in Providence.

The state then called to the stand Russell F. Coates (Coates) as a rebuttal witness. Over the objection of counsel for defendant,[2] Coates testified that on April 19, 1982, he was employed as a unit manager of the North Main Street Kentucky Fried Chicken restaurant and that he was on duty during the evening hours. At approximately 9:30 p.m., two men, one of whom had a gun, entered the restaurant. The first man engaged in a struggle with one of the operators of a cash register, while the armed assailant ordered the occupants of the restaurant to get down on the floor and commanded the cash register operator to open the register. He threatened that if she failed to do so, he'd "blow her away." The robber next required Coates to open each register and give him the money contained therein. He then demanded that Coates open the restaurant safe and turn over to him the money located there. Coates testified that after obtaining the money from

---

1. This court has defined an assault as an " 'unlawful attempt or offer, with force or violence, to do a corporal hurt to another [or to put] another in fear of violence.' " *State v. Ashness*, —— R.I. ——, ——, 461 A.2d 659, 665 (1983) (quoting *State v. Baker*, 20 R.I. 275, 277, 38 A. 653, 654 (1897)). When that attempt is made so that there is "the actual present ability of the defendant to inflict harm on the victim by using a dangerous weapon," then the act constitutes as-

sault with a dangerous weapon. *Ashness*, —— R.I. at ——, 461 A.2d at 665.

2. Although the objection was somewhat belated, in that it was made after the testimony had been given, for purposes of this opinion we shall assume that the objection was sufficiently timely in order to preserve this issue for review.

the safe, the robber left the establishment. Coates then identified defendant as the gunman who had entered the restaurant on April 19, 1982. Defense counsel made a timely motion to pass the case, which was denied by the trial justice. The trial justice ruled and observed in his final instructions to the jury that Coates's testimony was admitted to rebut Lemon's testimony that he had not been in the State of Rhode Island during the six-week period to which he testified in his own defense and further to rebut defendant's assertion that he had never been inside the restaurant.

There is no question that defendant's testimony in support of his alibi could be rebutted by testimony which tended to prove that he had been within the state during the period of his alleged sojourn in Boston. The defendant argues that this alibi testimony was not new matter. Such an argument is totally unpersuasive. The statement by defendant that he was out of state during the period that included the date of the offense with which he was charged was obviously new matter that was subject to contradiction by competent testimony. To suggest that it was not strains one's sense of logic. Such rebuttal testimony would have been totally inapposite as a part of the state's case-in-chief.

The defendant also argues that the testimony concerning the prior robbery should have been excluded under the general rubric that evidence of prior crimes is inadmissible to prove a disposition on the part of defendant to commit crimes of a similar nature save for the exceptions set forth in *State v. Colangelo*, 55 R.I. 170, 173–74, 179 A. 147, 149 (1935).

Indeed, the general rule of exclusion of evidence of prior crimes must be considered in the context that such evidence is inadmissible to prove the propensity of a defendant to commit such crimes but is not inadmissible to show a fact or facts relevant to the proof of guilt of the defendant of the crime with which he is charged. *Colangelo* sets forth a number of exceptions to the rule designed to give

guidance in determining the question of relevance. This list of exceptions to the exclusion of prior criminal conduct includes "guilty knowledge, intent, motive, design, plan, scheme, system, or the like * * *." *Id.* at 174, 179 A. at 149. This list of exceptions was certainly not designed to be exhaustive or all-inclusive. The proper rule is well explained in *McCormick's Handbook of the Law of Evidence*, § 190 at 557 (3d ed. Cleary 1984), as including proof of the identity of the guilty party. *See* 1 *Wharton's Criminal Evidence*, § 243 at 547 (13th ed. 1972). Such proof of identity has been regarded by courts and commentators as being a basic fact that requires proof in order to establish the charge. *See* Stone, *The Rule of Exclusion of Similar Fact Evidence: America*, 51 Harv.L.Rev. 988, 1026 n. 190 (1937–38). We have stated, and we reiterate, that a defendant has no right to be insulated from relevant evidence solely because such evidence might disclose that he has been guilty of another crime. *State v. Cline*, 122 R.I. 297, 330–31, 405 A.2d 1192, 1210 (1979). In that case the crime of escape was joined in the trial of the defendant with a charge of murder. We observed then that the proof of the crime of escape from the Adult Correctional Institutions was highly relevant in order to prove "how defendant could simultaneously be in a status of commitment to the ACI, and yet, apparently, be at liberty in the city of Providence." *Id.* at 330, 405 A.2d at 1210. In the instant case the fact that defendant was present in the city of Providence was a crucial fact. The circumstances under which the rebuttal witness had had the opportunity to observe defendant were also highly relevant to support the credibility of Coates's identification. Although this evidence was prejudicial to defendant, this alone is insufficient to render it inadmissible. All of the evidence that tends to prove that defendant is guilty of a crime might be said to be prejudicial. Said evidence is inadmissible only if it is prejudicial and irrelevant. The term "irrelevant" includes

evidence that tends to prove mere propensity or criminal disposition but not a fact that tends to prove the defendant's guilt regarding the particular crime in issue. *See* Stone, *supra.*

This court has consistently recognized the general rule of exclusion of evidence of a prior or subsequent crime designed only to show a propensity or predisposition on the part of a defendant to commit the crime with which he is charged. Nevertheless, evidence of a separate crime may be admissible if it has independent relevance in respect to the proof of an element material to " 'the chain of proof of the crime in issue.' " *State v. Acquisto,* —— R.I. ——, ——, 463 A.2d 122, 128 (1983) (quoting *State v. Colangelo,* 55 R.I. at 174, 179 A. at 149). The identity of the defendant and his presence in the state during a period when he claimed to have been absent was certainly an element material to the chain of proof in the case at bar. Therefore, the trial justice did not commit error in admitting testimony of the rebuttal witness that tended to prove that this defendant was present at the Kentucky Fried Chicken restaurant during the period when he claimed to have been in Boston.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed, and the papers in the case may be remanded to the Superior Court.

The Chief Justice participated in the oral argument and in the decision of the court, but he did not participate in the publication of the formal opinion.