STATE

v.

Adalberto VILLAFANE.

No. 99–20–C.A.

Supreme Court of Rhode Island.

Oct. 27, 2000.

Virginia M. McGinn, Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Providence, Paula Rosin, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court for oral argument on September 26, 2000, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. The defendant, Adalberto Villafane, has appealed a judgment of conviction for which he was sentenced to thirty years at the Adult Correctional Institutions (ACI), with twelve years suspended with probation and eighteen to serve on count 1, first-degree child molestation, and fifteen years to serve on count 2, assault with the intent to commit first-degree sexual assault, both to run concurrently. After hearing arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided summarily.

At trial before a jury while being cross-examined by defendant's counsel, the victim, whom we shall call Jill, made reference to a polygraph test that was administered to her in 1985, shortly after she reported the incidents that led to defendant's conviction. The exchange at trial was as follows:

"Q So on August 2, 1985, you told Trooper Lacouture that Mr. Villafane had tried to rape you, right?

"A Yes, sir.

"Q But you did not tell your mother at that point in time?

"A She was sitting right there.

"Q She was sitting right there?

"A She was in the police station there with us, with me. We discussed it in the cruiser over, only that she said, 'Are you okay? Are you going to be able to do this? We'll talk about it later. Just tell them the truth.' I said, 'Okay, mom.'

"Q Okay. She said tell him the truth? Tell them the truth?

"A Yes.

"Q That was on August 2, 1985?

"A Yes.

"Q When you went to the barracks and discussed the domestic assault—

"A Yes, sir.

"Q —and you went back to the barracks on September 10, 1985 to give a statement, didn't you?

"A Was that the statement or was that the polygraph?"

At that point, defendant's motion to strike was made and granted by the trial justice. The trial justice also immediately gave a curative instruction: "Jury instructed to disregard her response to Mr. Levy's question, was that the statement or the polygraph. Strike that from your mind." The next morning, upon reflection, defense counsel asked that the case be passed. He argued that a cautionary instruction could

not cure the prejudice to the defendant in this case. His motion was denied upon the trial justice's finding that he did not think "this matter has reached a point where this defendant's rights would be prejudiced by going forward." The judge gave further instruction on the issue before deliberations: "[I]f I ordered any testimony to be stricken, or to have you ignore from the record, you must follow my instruction in that regard. Any testimony that was ordered stricken cannot in any way influence your deliberations. As to assessing evidence in this case, you are also forbidden to discuss stricken testimony or to speculate on its meaning or relevance to this case."

■■■ It is well settled that a decision to pass a case and declare a mistrial lies within the sound discretion of the trial justice. *State v. Kryla*, 742 A.2d 1178, 1186 (R.I.1999); *State v. Figueroa*, 673 A.2d 1084, 1091 (R.I.1996). Because "he or she possesses a 'front row seat' at the trial and can best determine the effect of the improvident remarks upon the jury," the trial justice's determination will be given great weight and will not be disturbed unless it is shown to be clearly wrong. *Kryla*, 742 A.2d at 1186 (quoting *State v. Tempest*, 651 A.2d 1198, 1200 (R.I.1995)).

■■ We have held that because test results of polygraph examinations have not been established as scientifically accurate and reliable, and that because such results would be misleading to a jury, it is improper for them to be introduced for any purpose. *State v. Dery*, 545 A.2d 1014, 1017–18 (R.I.1988). The issue in this case, however, is whether the mere mention of the word "polygraph," when no results were divulged, "so inflame[d] the passions of the jury as to prevent their calm and dispassionate examination of the evidence." *State v. Kholi*, 672 A.2d 429, 432 (R.I.1996) (quoting *State v. Brown*, 522 A.2d 208, 211 (R.I.1987)). We are of the opinion that the trial justice did *not abuse his discretion* in finding that it did not.

The defendant argued that the sole utterance of the word polygraph by Jill in such close proximity to her reference to being admonished to tell the truth presented a strong inference that she was to be believed over defendant and that because this was a case of "he said/she said" the credibility of the witnesses was pivotal, and the judge's curative attempts were insufficient.

It is our conclusion that the mere mention of the word polygraph was insufficient to reverse the conviction and provide a new trial. This Court stated in *Powers v. Carvalho*, 109 R.I. 120, 128, 281 A.2d 298, 302 (1971), that "the giving of a strong cautionary or curative instruction by the court to the jury might negative [the mention of the word polygraph]." Here, the trial justice gave not one, but two curative instructions, one immediately after the reference, and one before jury deliberations. Moreover, the statement only ambiguously implied that Jill was the subject who took the polygraph test. Further, we believe that the evidence against defendant was overwhelming. *See Kholi*, 672 A.2d at 432 ("We agree with the trial justice that the prosecutor's question in the instant case was unlikely to have inflamed the jurors' passions against defendant. The evidence against defendant in respect to his sexual abuse of Amy and Julie was overwhelming"). Thus, the trial justice, who was in the best position to assess the impact the reference had on the jury, did not abuse his discretion in refusing to pass the case.

The defendant also argued that the trial justice erroneously denied his motion for judgment of acquittal on count 2, assault with intent to commit first-degree sexual assault. The defendant essentially argued that no reasonable juror could conclude beyond a reasonable doubt from the evidence presented at trial that he had the specific intent to commit first-degree sexual assault. We disagree.

■■ When considering a motion for a judgment of acquittal this Court, like the trial court, "must view the evidence in the

light most favorable to the state, draw all reasonable inferences that are consistent with guilt, without assessing the credibility of witnesses or assigning weight to the evidence." *State v. Brezinski*, 731 A.2d 711, 715 (R.I.1999). If that examination reveals sufficient evidence to warrant a jury verdict of guilt beyond a reasonable doubt, the trial court properly denied the motion. *Id.*

In this case, we affirm the trial justice's ruling on the motion for a judgment of acquittal. Jill testified that during the incident on which count 2 is based, the defendant pushed her down onto the bed, pulled off her pants and her underwear, and climbed on top of her. Although Jill testified that she was able to get away before a first-degree sexual assault was committed, we believe that on this evidence one could reasonably infer that the defendant intended to commit first-degree sexual assault at that time.

Therefore, we deny and dismiss the defendant's appeal and affirm the judgment of the Superior Court, to which the papers in this case are remanded.