**STATE**

v.

**Keith WERNER.**

No. 97–497–C.A.

Supreme Court of Rhode Island.

June 11, 2003.

 

Jane McSoley, Aaron L. Weisman, Lauren Sandler Zurier, Providence, for Plaintiff.

Paula Rosin, Providence, Susan B. Iannitelli, Christoph S. Gontarz, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, J., and WEISBERGER, C.J. (Ret.).

## OPINION

WEISBERGER, Chief Justice (Ret.).

This case comes before us on an appeal by Keith Werner (defendant or Werner) from a judgment of conviction entered in the Superior Court for the County of Providence on a charge of assault with a dangerous weapon. The defendant had been charged by criminal information with one count of assault with a dangerous weapon and one count of assault upon a correctional officer. The trial began on April 3, 1995. On April 7, 1995, the jury returned a verdict of guilty on count 1 (assault with a dangerous weapon) and not guilty on count 2 (assault upon a correctional officer). The trial justice denied the defendant's motion for a new trial and sentenced him to serve five years imprisonment at the Adult Correctional Institutions (ACI). The sentence was to run consecutively to other sentences that the defendant already was serving at that time. We deny and dismiss the appeal. The facts and procedural history of the case insofar as pertinent to this appeal are as follows.

## Facts and Procedural History

On March 4, 1991, Christopher Noon (Noon), a correctional officer employed by the ACI, was assigned to the H–Module in the Intake Service Center of the ACI. At approximately 1 p.m., Werner was allowed to emerge from his cell for a one-hour recreational period. At this time, Noon was stopping at individual cells, offering inmates a match to light their cigarettes. As Noon stood near Cell Number 7, defendant grabbed the front of Noon's shirt, ripped a Cross pen from his breast pocket, and began stabbing at Noon's face and neck with the pen. Noon testified that he suffered a slash across his left ear, a puncture wound to his left chest, and a laceration to his right middle finger. As Noon and defendant struggled, another correctional officer, Frank Pezza (Pezza), saw defendant's right hand moving in a stabbing motion toward Noon and heard a scream. Pezza also observed that Noon was bleeding from an area near his mouth. Pezza attempted to separate defendant and Noon. In the course of struggling, Pezza caused defendant and Noon to fall backwards on the floor. Noon testified that he struck his head on the floor when he fell and was dazed for a few moments by the blow. Noon said that when he regained consciousness, defendant was on top of him, attempting to bite his face. After the assault, Noon was brought to the prison infirmary, where he was examined by a nurse. He then was taken by ambulance to Rhode Island Hospital.

Pezza tried to pull Werner from Noon's body. As he did so, defendant jumped backward and his forearm struck the right side of Pezza's rib cage. The defendant continued to struggle, causing Pezza to hit the wall several times. Pezza did not see a weapon of any type in Werner's hands. Two other correctional officers, Steven Guilmette (Guilmette) and William Be-

gones (Begones), came on the scene in response to a panic alarm that Pezza had pushed to call for additional help. Guilmette saw defendant making a stabbing motion with his right hand. He grabbed defendant's hand, and with the help of Begones pried the pen out of defendant's hand. Guilmette then threw the pen toward Cell Number 12 to get it away from defendant's reach. The defendant also was taken to the infirmary, where he was examined by an ACI nurse. The nurse noted some cuts and abrasions on his face. Richard Corley, an attorney who testified as a defense witness, said that he had met with Werner on March 5, 1991 (the day after the alleged assault), and observed that Werner had one swollen black eye and scratches around his other eye, which was red. Mr. Corley also noted a lump on the back of defendant's head, and he thought he saw some stitches there. The ACI nurse recommended that defendant be examined further, and he was taken to Kent County Hospital, where he received stitches for a 7.5 centimeter laceration on the back of his head. The second count of the information alleged an assault on Frank Pezza. The defendant was found not guilty of this charge.

To support his appeal, defendant has raised three issues in a brief filed by the public defender on his behalf. The defendant also has filed a *pro se* supplemental brief on his own behalf in which he raises four issues and numerous subissues. These issues will be discussed in the order of their significance to this opinion. Further facts will be supplied as needed to deal with these issues.

## I

## Dismissal of the Charges for Violation of the Interstate Agreement on Detainers Act

The defendant argues that the criminal information should have been dismissed because the state failed to bring the case to trial within the time limitations required by the Interstate Agreement on Detainers Act (IADA), G.L.1956 chapter 13 of title 13. The trial justice denied the motion to dismiss on this ground and, in his ruling, incorporated the reasoning of other Superior Court justices who had denied similar defense motions based on this alleged IADA violation.

For the reasons stated in our opinion in *State v. Werner*, 830 A.2d 1107 (R.I.2003), we deny defendant's appeal on this ground.

 The defendant, in his *pro se* supplemental brief, raises the additional ground that the Superior Court for the County of Kent, which denied his motion to dismiss on IADA grounds, was without subject-matter jurisdiction to do so. We reject this argument, since the several counties of this state do not constitute separate jurisdictions. They are separate venues in which trials normally take place involving offenses that have been committed within a particular county. However, by order of a justice of the Superior Court for the convenience of parties and witnesses, proceedings may be transferred to another county. *See* Rule 21 of the Superior Court Rules of Criminal Procedure. In the case at bar, a justice of the Superior Court for the County of Kent heard a number of motions relating to the IADA time frames in the County of Kent. Since the same issue was involved in all cases (including the information in the case at bar), it was convenient for the parties to argue all motions at the same time since they involved nearly identical issues. There was no absence of subject-matter jurisdiction on the part of the motion justice who heard these arguments and ruled on defendant's contentions in respect to several cases. The

record discloses no objection based upon improper venue as having been raised by defendant at the time of this argument. Consequently, we deny defendant's argument based on lack of jurisdiction.

## II

### The Trial Justice's Ruling In Respect to Defendant's Previous Acts of Violence

■ The defendant contends that the trial justice committed reversible error by ruling that if Werner took the stand and testified that he was acting in self-defense when he assaulted Noon, evidence of defendant's previous assaults on other inmates and correctional officers would have been allowed into evidence to rebut the claim of self-defense. The defendant further argues that as a result of this ruling, he was constrained to decline to be a witness and thus prevented from taking the stand in his own defense.

■ Rule 404(b) of the Rhode Island Rules of Evidence precludes the admission of "[e]vidence of other crimes, wrongs, or acts * * * to prove the character of a person in order to show that the person acted in conformity therewith." The rule, however, permits evidence of previous bad acts to be admitted as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident * * *." *Id.* In *State v. Parkhurst,* 706 A.2d 412, 424 (R.I.1998), we cited the rule and held that the state may present prior misconduct to establish a fact that tends to prove that the defendant is guilty of the crime charged. *See also State v. Stewart,* 663 A.2d 912, 923 (R.I. 1995); *State v. Lemon,* 497 A.2d 713, 720 (R.I.1985). The mere fact that such evidence is prejudicial to a defendant does not render it inadmissible. In *Parkhurst,* the defendant had raised the issue of diminished capacity because of intoxication as a defense. To rebut this defense, the trial court admitted evidence of a subsequent robbery. We held this evidence to be admissible. *Parkhurst,* 706 A.2d at 424. In the case at bar, the evidence of previous assaults was necessary to rebut beyond a reasonable doubt defendant's claim of self-defense. Thus, such evidence was highly relevant. We have held that "evidence of prior criminal acts [is] inadmissible only if that evidence is both prejudicial and irrelevant." *State v. Martinez,* 651 A.2d 1189, 1194 (R.I.1994).[1]

■ Our standard of review of the admission of previous bad acts is that of abuse of discretion. *State v. Garcia,* 743 A.2d 1038, 1050 (R.I.2000). In the circumstances of this case, there was no abuse of discretion to allow the state to admit evidence of defendant's prior assaults to disprove defendant's assertion that he did not act with unlawful intent in attacking Noon. *See State v. Pule,* 453 A.2d 1095, 1097 (R.I.1982). Consequently, defendant's argument on this issue cannot prevail.

■ The defendant also argues in his supplemental *pro se* brief that a previous

---

1. The holdings in these cases are not inconsistent with *State v. Dellay,* 687 A.2d 435 (R.I. 1996), which held that the trial justice did not abuse his discretion in limiting evidence of previous aggressive and violent acts on the part of a victim to reputation evidence in an effort to prove that the victim was the aggressor. Evidence of specific acts of violence would have been admissible if defendant was aware of them. *Id.* at 439. Our case law in support of disproving beyond a reasonable doubt a defendant's claim of self-defense is somewhat broader than *Dellay* allowed to support a claim of self-defense. Moreover, the standard of review was abuse of discretion. *Id.* It may well not have been an abuse of discretion for the trial justice to have allowed evidence of specific acts to support the defense.

statement he made to ACI investigators, which included an allegation that Noon had punched defendant in the mouth, should have been admitted. The trial justice refused to admit such a statement on the ground that it constituted hearsay. This ruling was correct since the statement was offered for the truth of the matter asserted and it would not have been subject to the safeguard of cross-examination. *See State v. Bustamante,* 756 A.2d 758, 764 (R.I.2000); *State v. Harnois,* 638 A.2d 532, 536 (R.I.1994).

### III

### The Motion for Mistrial

The defendant contends that the trial justice committed prejudicial error in declining to grant a motion for a mistrial when a correctional officer referred on cross-examination to the term "segregation" in referring to the unit in which Werner was confined. The facts leading up to this motion were as follows.

Before trial, defendant moved *in limine* to preclude state's witnesses from referring to the H–Module, where defendant was confined at the ACI, as the "segregation" block. The jury was aware that defendant was allowed out of his cell only one hour each day. This fact was necessary to disclose in order to establish that defendant was the only inmate on the H–Module who was out of his cell at the time Noon was assaulted.

The trial justice stated, in response to this motion, that he assumed that the prosecutor would avoid such an "inflammatory" reference. The prosecutor informed the trial justice and defense counsel that he specifically had instructed his witnesses to avoid such a reference. However, during cross-examination by defense counsel of correctional officer Frank Pezza, the following exchange occurred:

"Q How many times have you seen Mr. Werner before March 4, 1991 come out [from his cell] that particular way that you just described * * *?

"A Seven or eight times.

"Q So, it's fair to say then, at least seven or eight other times you were in H–Mod[ule] before March 4, 1991, right?

"A Well, segregation—excuse me—sorry, H–Mod has been moved around to different blocks so sometimes it goes down in C and sometimes it was in H.

"Q But the people that were in H–Mod were the same people all the time, weren't they?

"A Not necessarily.

"[DEFENSE COUNSEL]: Okay.

"THE COURT: I'm going to send the jury upstairs. I want to have a chat with you gentlemen. Please don't discuss the case among yourselves."

After the jury had left the courtroom, defendant's counsel moved for a mistrial and explained that he had not moved to pass the case immediately after Pezza had used the word "segregation" because he did not want to draw extra attention to it. For the same reason, he did not request a cautionary instruction because he feared it would highlight the testimony and cause further damage. He argued that the only remedy for Pezza's lack of compliance with the admonition, even if it was unintentional, would be to grant the motion for a mistrial. The trial justice responded that he would not pass the case because he felt that the officer's "slip of the tongue" was inadvertent and was not meant to inflame the jury.

▆▆ We have held that a decision to grant or deny a motion for mistrial is within the discretion of the trial justice. *State v. Villafane,* 760 A.2d 942, 944 (R.I.

2000) (per curiam). The standard of review for such a decision is that of an abuse of discretion. The decision will be upheld unless it is clearly wrong. *State v. Aponte,* 800 A.2d 420, 427 (R.I.2002); *Villafane,* 760 A.2d at 944. We have observed that the trial justice enjoys a ringside seat at the trial and therefore is in the best posture to determine whether a witness's inappropriate remark has so inflamed the jurors that they no longer would be able to decide the case based on a calm and dispassionate evaluation of the evidence. *State v. Luciano,* 739 A.2d 222, 228 (R.I. 1999). The trial justice makes this determination by examining the witness's statement or remark in its factual context. *State v. Fernandes,* 526 A.2d 495, 498 (R.I. 1987).

■ Placing Pezza's inadvertent use of the word "segregation" in context, we are of the opinion that the jurors would not have been inflamed to the point that they would be unable to examine the evidence in a calm and dispassionate manner. The jurors already knew that defendant was in prison and that he was required to be in his cell twenty-three hours each day. The use of the word "segregation," even though considered to be inappropriate by the trial justice, was not so inexpiable as to require a mistrial. *State v. Brown,* 522 A.2d 208, 210 (R.I.1987). In this case, no cautionary instruction was requested or given to avoid emphasizing the reference to "segregation." As the state points out, it is noteworthy that the jurors acquitted defendant on the charge of assaulting Frank Pezza. This would indicate that they were able fairly to evaluate the evidence without undue prejudice because of this slip-of-the-tongue reference.

We conclude that the trial justice did not commit prejudicial error in declining to grant the motion for mistrial.

## IV

### Other Issues

The defendant has raised a number of issues in his *pro se* supplemental brief. We have considered these issues and have determined that his evidentiary arguments relating to excited utterances as made to Chief Inspector Saccoccia, remarks by the prosecutor, and the various other issues to which he referred, do not disclose that the trial justice committed prejudicial error. None of his supplemental arguments persuades us that the defendant's conviction should be reversed.

### Conclusion

For the reasons stated, the appeal of the defendant is denied and dismissed. The conviction entered in the Superior Court is hereby affirmed. The papers in the case may be remanded to the Superior Court.

Justices GOLDBERG and FLAHERTY did not participate.