STATE

v.

**Emmanuel BARBOSA.**

No. 2005–234–C.A.

Supreme Court of Rhode Island.

Oct. 23, 2006.

 

Diane Daigle, for Plaintiff.

Marie T. Roebuck, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

A jury found the defendant, Emmanuel Barbosa, guilty of the following felonies: (1) felony assault; (2) carrying a pistol without a license; and (3) possession of a firearm after previous conviction of a crime of violence. With respect to those three counts, the defendant received an aggregate sentence of twenty years imprisonment, with ten years to serve at the Adult Correctional Institutions and ten years suspended, with probation. In addition, he received a consecutive sentence of five years imprisonment without the possibility of parole as a consequence of his status as a habitual criminal pursuant to G.L.1956 § 12-19-21.

The defendant has appealed to this Court, contending (1) that the trial justice erred in refusing to pass the case and declare a mistrial after a particular portion of the prosecution's redirect examination of a witness elicited an implication that defendant had intimidated the witness and (2) that the trial justice abused his discretion in denying defendant's request for a continuance of the trial date due to the unavailability of a particular defense witness.

This case came before this Court on September 25, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. Having

considered the record, the briefs filed by the parties, and the oral arguments, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument. For the reasons set forth in this opinion, we deny the appeal and affirm the judgment of the Superior Court.

## Facts and Travel

The defendant was charged with felony assault, carrying a pistol without a license, and possession of a firearm after previous conviction of a crime of violence. On May 10, 2004, the day the trial was scheduled to begin, defendant requested a continuance based on the unavailability of one Maria Morales, a person whom defendant said he planned to call as a witness. The trial justice denied this request; he impaneled a jury that afternoon and began the trial the next morning. Testimony from the various witnesses during the trial elicited the following facts.

On June 25, 2003, at approximately 7:30 p.m., Joseph Volpe was driving down Eastwood Avenue in Providence with his car windows open. Mr. Volpe was accompanied by his girlfriend, who was seated in the front passenger seat; he was also accompanied by Ivan Calderon[1] and his wife, who were both seated in the back seat of the car. As Mr. Volpe proceeded down Eastwood Avenue, his car hit a dog owned by defendant.

At trial, Mr. Volpe testified that, after he hit the dog, he turned his vehicle around and heard defendant shout twice, "You hit my dog." The defendant then approached Mr. Volpe's car and said once again, "You hit my dog." Mr. Volpe apologized, saying, "I'm sorry, but you should have had your dog on a leash." Mr. Volpe further testified that defendant then pulled out of his shorts a black .9 millimeter gun with a brown handle and pointed it at Mr. Volpe's head through the open car window while saying, "I could hurt you" and "I could kill you."

During the prosecution's case-in-chief, Mr. Calderon, one of Mr. Volpe's back seat passengers, testified that defendant approached Mr. Volpe's car with a piece of paper in his hands, shouting, "I'm going to call the police" and "You hit my dog." Mr. Calderon denied that he had observed defendant pull a gun out of his pocket and point it at Mr. Volpe that night, which testimony contradicted a statement that he had given to the police on the night of the incident.[2]

A defense witness, Noemi Ares, who was sitting on the porch of her house on Eastwood Avenue on June 25, 2003, testified that she observed Mr. Volpe's car hit defendant's dog and that she never saw defendant with a gun that night. Ms. Ares acknowledged that she had been involved in an on-and-off relationship with defendant and that they had had a child together. She also admitted that, before testifying, she had discussed her recollection of the night in question with defendant. Ms. Ares said that Maria Morales, another adult witness present that night, wrote down the license plate number of Mr. Volpe's vehicle and gave it to defendant.

---

**1.** There is a discrepancy in the record as to the spelling of Mr. Calderon's name. Throughout this opinion, we will use the spelling that appears on the statement he gave to the police.

**2.** Mr. Calderon testified at trial that on the night in question he had seen defendant with a dark-colored object in his hand. By contrast, in his statement to the police Mr. Calderon stated, "[Defendant] went into his pocket * * * and pulled out a gun." Said statement also specified that defendant had "pointed [the gun] at Joe."

Ms. Morales was unavailable to testify at trial because she was in Puerto Rico with her ill mother.

The defendant testified in his own defense that he was angry when Mr. Volpe hit his dog and that he approached Mr. Volpe's vehicle to yell at him. The defendant stated that he pulled his prescription sunglasses out of the left pocket of his jeans and that he held a piece of paper containing Mr. Volpe's license plate number in his right hand as he was advancing toward the car. The defendant admitted to uttering the following words: "I should punch you in the jaw * * *." But, he denied consummating any such battery; he also denied threatening Mr. Volpe with a gun or even having a gun in his possession that night.

At the conclusion of the trial, the jury convicted defendant of all three counts with which he had been charged—viz., felony assault, carrying a pistol without a license, and possession of a firearm after previous conviction of a crime of violence. The defendant then filed a motion for a new trial, which was denied on May 27, 2004. The defendant received an aggregate sentence of twenty years imprisonment, with ten years to serve and ten years suspended, with probation. The trial justice also found defendant to be a habitual criminal under § 12–19–21, imposing an additional sentence of five years imprisonment, without the possibility of parole, to be served consecutively.

On appeal to this Court, defendant contends (1) that the trial justice erred in refusing to pass the case and declare a mistrial after a particular portion of the prosecution's redirect examination of a witness elicited an implication that defendant had intimidated the witness and (2) that the trial justice abused his discretion in denying defendant's request for a continu-ance of the trial date due to the unavailability of a particular defense witness.

## Standard of Review

■ The trial justice is vested with broad discretion regarding the decision to pass a case and declare a mistrial, and such a decision will not be reversed on appeal unless it is clearly wrong. *State v. Bryant*, 888 A.2d 965, 969–70 (R.I.2006) ("[T]he decision of whether or not to pass a case and declare a mistrial is also a matter left to the sound discretion of the trial justice, and that decision will not be disturbed on appeal absent clear error."). The trial justice's "front row seat" at the trial places him or her in the best position to determine the effect of remarks on the jury, thus justifying the broad powers he or she holds. *State v. Tempest*, 651 A.2d 1198, 1207 (R.I.1995); *see also Bryant*, 888 A.2d at 970.

■ Similarly, the decision as to whether or not to grant a motion for continuance in order to secure the attendance of a witness is a matter confided to the sound discretion of the trial justice; it will not be overturned on appeal unless there was an abuse of that discretion. *State v. Firth*, 708 A.2d 526, 530 (R.I.1998) ("A motion for continuance made immediately prior to, or during, a trial in order to secure the attendance of a witness is addressed to the sound discretion of the trial justice and will not be disturbed on appeal absent an abuse of discretion.").

## Analysis

### I

### The Motion to Pass the Case and Declare a Mistrial

■ The defendant's first contention is that his due process rights were violated when the trial justice declined to pass the case and declare a mistrial after a particu-

lar portion of the prosecution's redirect examination of a witness elicited an implication that defendant had intimidated the witness. We are not persuaded by this contention.

During the redirect examination of Mr. Calderon, the prosecuting attorney confronted Mr. Calderon regarding the inconsistency between his trial testimony and his statement to the police on June 25, 2003:

"Q. In this statement, you told the police, you told this detective, 'He went into his pocket and pulled out a gun.' You agree with me? Isn't that what it says in there?

"A. That's what it says, yeah. That's what it says, yes.

"Q. You agree with me that you said you were at the front bumper when he pointed it at Joe [Volpe], referring to the gun? You agree that's what it says[.] Do you see it right there? 'I was at the front of the car near the front bumper when he pointed it at Joe .' Do you see that?

"(PAUSE)

"A. I didn't see him point a gun.

"Q. Does it say that in the statement?

"A. Yes.

"Q. Okay. When did you learn, Mr. Calderone, that the defendant had a copy of this statement?

"A. Had a copy of this statement?

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Hold on a second. I'm going to allow it.

Overruled.

"A. Today.

"Q. Does that statement have your address on it?

"A. Yes.

"[PROSECUTOR]: Nothing further.

"THE COURT: [Defense counsel].

"[DEFENSE COUNSEL]: I have a motion, Judge, at the side bar."

■ A motion to pass a case and declare a mistrial should be granted when the trial justice determines that a witness's remarks have "so inflamed the jurors that they no longer would be able to decide the case based on a calm and dispassionate evaluation of the evidence." *State v. Werner*, 830 A.2d 1107, 1113 (R.I.2003); *see also State v. Disla*, 874 A.2d 190, 198 (R.I.2005). The fundamental policy consideration in this regard is that the jurors must be able to consider the evidence properly submitted without being significantly distracted by anything not in evidence. *See State v. Pacheco*, 763 A.2d 971, 979 (R.I.2001); *see also State v. Bolduc*, 822 A.2d 184, 186 (R.I.2003). In making that determination, the trial justice should not limit his or her focus to the challenged statement alone, but rather must examine it in view of the entire trial context. *See Werner*, 830 A.2d at 1113.

■ "Not all potentially prejudicial statements * * * require the trial justice to pass the case." *Bolduc*, 822 A.2d at 186. More specifically, even if the words of a particular witness, if not further addressed, could have a prejudicial effect on defendant's right to a fair trial, a motion to pass a case and declare a mistrial will properly be denied if a cautionary instruction is given in a timely manner and is effective in curing the prejudice. See *State v. Shinn*, 786 A.2d 1069, 1072 (R.I. 2002) (" '[I]f the prejudice can be cured[,] * * * a mistrial will be ordered only if we are convinced that the cautionary instructions were untimely or ineffective.' "); see also *Disla*, 874 A.2d at 198.

Here, defendant argues that the above-quoted questioning of Mr. Calderon by the prosecution gave rise to an implication that

defendant had somehow intimidated Mr. Calderon. The trial justice correctly concluded that this possible implication did not rise to such a level as to necessitate the granting of defendant's motion to pass the case and declare a mistrial, but rather could be resolved by the giving of a cautionary instruction. An appropriate and clear instruction was given in a timely manner: the trial justice instructed the jury immediately after the sidebar conference and the lunch break that followed the challenged portion of the redirect examination of Mr. Calderon.[3] Moreover, there is no indication in the record that the cautionary instruction was likely to be ineffective. This Court must assume that the jury has disregarded those portions of testimony that were the subject of such a cautionary instruction unless some indication exists that the jury was unable to comply with the cautionary instruction. *State v. Powers*, 566 A.2d 1298, 1304 (R.I. 1989); see also *State v. Mendoza*, 889 A.2d 153, 159 (R.I.2005). In this case, there is no indication that the jury was incapable of obeying the cautionary instruction. In fact, it is noteworthy that all the jurors indicated to the trial justice that it was understood by them that they must disregard both the challenged question and any answer to it.[4]

## II
## Motion for a Continuance

■ The defendant's second contention on appeal is that the trial justice abused his discretion in denying defendant's request for a continuance of the trial date due to the unavailability of a defense witness, viz., Ms. Morales. We are not persuaded by this argument.

■ "A defendant is not entitled to a continuance * * * as a matter of course." *State v. Barnes*, 122 R.I. 451, 455, 409 A.2d 988, 990 (1979); see also *Firth*, 708 A.2d at 530. Moreover, this Court has previously recognized the pressure on trial justices to limit their grant of requests for continuances. *State v. Coelho*, 454 A.2d 241, 246 (R.I.1982). Of course, it should also be noted that we have recognized that circumstances can arise which require that a request for a continuance be honored so as to protect the accused's Sixth Amendment-based right to present favorable evidence necessary to his or her defense. *State v. Gatone*, 698 A.2d 230, 239 (R.I.1997).

■ No mechanical test exists for deciding when a denial of a request for a continuance is so arbitrary as to violate due process. *Coelho*, 454 A.2d at 243. Instead, the trial judge must assess the facts and circumstances of each particular case with an emphasis on the reasons pre-

---

**3.** After directing the court reporter to read back the prosecutor's question that had been challenged, the trial justice gave the following cautionary instruction:

"Members of the jury, from that question, if any of you or all of you have drawn any adverse implication from that question, I instruct you to disregard any adverse inference or thought from that question whatsoever. There was no factual basis in this case for that question to be posed. And I instruct you that the question is stricken. Any answer that may have been given—I don't recall if there was—is disregarded. There's no evidence before this Court that

would warrant any adverse inference from that question."

**4.** Immediately after giving the cautionary instruction, the trial justice addressed the jurors as follows:

"Do you all understand that? Do you all understand that the question and any possible answer that might have been purported from that question, you have to disregard? Do you understand that?"

The trial transcript then contains the following notation:

"(ALL JURORS INDICATED AFFIRMATIVELY)."

sented for the requested continuance. *See id.* at 243–44; *see also Barnes,* 122 R.I. at 455, 409 A.2d at 990. Four main criteria should guide the trial justice when determining whether or not to grant a continuance based upon the absence of a defense witness: (1) whether the witness's testimony would be material; (2) whether the defendant used due diligence in attempting to procure the attendance of the witness or the deposition of said witness; (3) whether it is reasonably certain that the witness would be available to testify on the date to which the trial would be continued; and (4) whether the testimony would not be merely cumulative. *Firth,* 708 A.2d at 530.

In this case, the trial justice properly considered and weighed the appropriate factors in making his decision to deny the request for a continuance. He noted that the absent witness's testimony would be cumulative and that defendant had failed to procure the attendance of the witness even though he had known for at least two weeks that she was in Puerto Rico. The trial justice also detailed the eleven previous instances (over a span of six months) in which he had granted continuances to both sides, and he took into account the readiness of both the prosecution and the court to proceed with the case. Finally, he concluded that his denial of the requested continuance would not prejudice defendant.

The denial of a motion for a continuance constitutes an abuse of discretion only if the movant is able to satisfy all four of the criteria enumerated in *Firth. Barnes,* 122 R.I. at 456, 409 A.2d at 991. Here, the trial justice, after considering the articulated guidelines, determined that the movant had not satisfied the required conditions, particularly the second and fourth criteria. We perceive no basis in the record for concluding that the trial justice abused his discretion in reaching that determination.

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.