Emmanuel **BARBOSA**

v.

**STATE of Rhode Island.**

**No. 2011–46–Appeal.**

Supreme Court of Rhode Island.

June 4, 2012.

C. Daniel Schrock, Esq., for Applicant.

Lauren S. Zurier, Department of Attorney General, for State.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The applicant, Emmanuel Barbosa, appeals from a Superior Court judgment denying his application for postconviction relief. The applicant contends "that the hearing justice misconceived or overlooked evidence in determining that there was not a reasonable probability that, but for trial counsel's unprofessional errors, the result of his trial would have been different." This case came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

The applicant was charged by criminal information with felony assault, carrying a pistol without a license, and possession of a firearm after previous conviction of a crime of violence. In 2004, after a jury trial, applicant was found guilty of all charges, and he was sentenced to twenty years at the Adult Correctional Institutions, with ten years to serve and ten years suspended, with probation. Further, after the trial justice found applicant to be a habitual criminal under G.L.1956 § 12–19–21, an additional sentence of five years imprisonment without the possibility of parole was imposed, to be served consecutively. The applicant appealed his conviction to this Court, and we affirmed it in *State v. Barbosa*, 908 A.2d 1000, 1006 (R.I.2006). The facts underlying applicant's conviction were recited by this Court in *Barbosa*, 908 A.2d at 1002–03; however, for the purpose of placing this appeal in context, a brief summary of those facts is related herein.

On June 25, 2003, Joseph Volpe was driving on Eastwood Avenue in the City of Providence, accompanied by his girlfriend, who was seated in the front seat of the vehicle, as well as by Ivan Calderon and his wife, Sheila Calderon,[1] who were seated in the back seat. As Volpe proceeded down the road, his car hit a dog owned by Barbosa. Thereafter, an altercation ensued, the details of which were disputed at trial. Volpe testified that he turned his vehicle around after hitting the dog and heard applicant shout twice: "You hit my dog." Volpe further testified that applicant then approached his car and, after

---

1. As we indicated in *State v. Barbosa*, 908 A.2d 1000, 1002 n. 1 (R.I.2006), there is a discrepancy in the record concerning the spelling of Mr. and Mrs. Calderon's last name. For the purposes of this opinion, we adopt the spelling "Calderon," as we did in *Barbosa*. In any event, for the sake of clarity, and without any disrespect intended, we hereinafter refer to Mr. and Mrs. Calderon as Ivan and Sheila.

exchanging some words with Volpe, pulled a black 9 mm handgun with a brown handle from his shorts, pointed it at Volpe's head, and stated: "I could hurt you" and "I could kill you."

Ivan testified somewhat differently about the interchange between Barbosa and Volpe. He stated that Barbosa approached Volpe's car with a piece of paper in his hand, shouting: "I'm going to call the police" and "You hit my dog." Ivan also testified that he had seen applicant with a dark-colored object in his hand, but he denied that he had observed applicant with a gun. However, this latter testimony by Ivan was contradicted by a statement that he had given to the police on the night of the incident, in which he stated that he had witnessed Barbosa pull out a gun and point it at Volpe.

The applicant testified in his own defense. He testified that he approached Volpe's vehicle to yell at him, angry that Volpe had hit his dog. The applicant stated that as he approached, he held a piece of paper in his right hand that contained Volpe's license plate number, and that he had pulled his prescription sunglasses out of the left pocket of his jeans. The applicant admitted to threatening Volpe, but he denied doing so with a gun or ever having a gun in his possession that evening.

Another witness, Noemi Ares, the mother of applicant's child, testified that she had observed the altercation from the porch of her house on Eastwood Avenue

and that she never saw Barbosa with a gun that evening. Ares did admit, however, that she had discussed her recollection of the evening in question with Barbosa before testifying.

The jury convicted applicant based on the above-mentioned testimony and, on November 1, 2006,[2] he filed a *pro se* application for postconviction relief, alleging ineffective assistance of his trial counsel. His application alleged numerous grounds for his ineffective assistance claim; however, central to this appeal is his allegation that "trial counsel failed to locate and interview potential defen[s]e witnesses," namely, Sheila Calderon. The applicant stated that Sheila "would have testified to the fact that [applicant] * * * did not brandish a weapon or facsimil[e], as alleged by [Volpe]."

To support his application, Barbosa, through his then-appointed counsel, conducted a deposition of Sheila on July 20, 2009.[3] The deposition revealed that Sheila had little recollection of the June 25, 2003 incident;[4] she stated that the extent of her memory was that Volpe's car hit a dog, that the dog's owner "had words" with Volpe, and that she and the other occupants of the vehicle then "left" the scene. Sheila testified that she had heard a male voice, which she believed belonged to the dog's owner, say "[t]hat was my dog" and "[y]ou hit my dog." She further testified that she had no recollection of seeing the dog's owner brandish a handgun or point it

---

**2.** The applicant's postconviction-relief application does not contain an official Superior Court date stamp; however, the Superior Court docket sheet indicates that the application was filed with the court on November 1, 2006.

**3.** The record does not contain an official transcript of this deposition; however, a copy of the transcript is attached to applicant's memorandum before this Court.

**4.** Sheila testified that she could not recall at what time the accident occurred; what street the vehicle had been driving on; where she and the other occupants had been going at the time; how long the incident lasted; whether her husband had exited the vehicle; whether applicant had approached the vehicle and how far away he stood; or whether the police had come to the scene.

at Volpe, and she surmised that if the man had taken out a handgun, she "would have recalled it." Nevertheless, she averred that she did not recall seeing the man and did not remember "at all" what he looked like because she had not been "paying attention" to the man. Sheila explained her lack of memory, stating: "Maybe if you talked to me two years after [the incident, I would have remembered it]. I have MS and other things going on, a lot has happened in that time, and it's not something that I recall."

A hearing on Barbosa's postconviction-relief application was held on August 25, 2009. The hearing justice[5] reviewed Sheila's deposition testimony, as well as the transcripts from applicant's trial and from the hearing on his motion for a new trial, and she considered arguments from applicant and the state. Ultimately, the hearing justice denied applicant's request for postconviction relief, finding that he was unable to prove the second prong of the *Strickland* two-part test. She noted that it was not sufficient to say that applicant's trial counsel should have interviewed certain witnesses; in addition, it was necessary for applicant to show that, if his trial counsel had interviewed such witnesses, "he would have obtained information that would have had an impact on the outcome of the case." According to the hearing justice, it was "pure speculation" to question whether Sheila's testimony of the June 25, 2003 incident would have been better had she been interviewed before the trial. As such, the hearing justice focused her review on Sheila's deposition testimony, finding that her "testimony, if it had been offered consistent with her deposition, would not have, in all reasonable probability, altered the outcome [of the case]." Judgment was entered denying applicant's request for postconviction relief

on August 25, 2009, and thereafter applicant timely appealed to this Court.

## II

### Standard of Review

██ "[P]ost-conviction relief is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights that the state or federal constitutions secured to him." *Gordon v. State*, 18 A.3d 467, 473 (R.I. 2011) (quoting *Young v. State*, 877 A.2d 625, 628 (R.I.2005)); *see also* G.L.1956 § 10–9.1–1(a)(1). It is well established that "[t]his Court will not disturb a trial justice's factual findings made on an application for post-conviction relief absent clear error or a showing that the trial justice overlooked or misconceived material evidence in arriving at those findings." *Gordon*, 18 A.3d at 473 (quoting *Bustamante v. Wall*, 866 A.2d 516, 522 (R.I. 2005)). We, however, will "review *de novo* any post-conviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights." *Id.* (quoting *Bustamante*, 866 A.2d at 522).

██ In reviewing claims of ineffective assistance of counsel, "[t]his Court adheres to the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Rodriguez v. State*, 941 A.2d 158, 162 (R.I.2008). To prevail on such a claim, an applicant must establish both components of the following bipartite test. "First, the applicant must 'demonstrate that counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment.'" *Id.* (quoting *Brennan*

5. The hearing justice was not the same justice who had presided over applicant's trial.

*v. Vose,* 764 A.2d 168, 171 (R.I.2001)). This component may be established "only by a showing that counsel's representation fell below an objective standard of reasonableness." *Id.* (quoting *Brennan,* 764 A.2d at 171). Second, the applicant must establish "prejudice emanating from the attorney's deficient performance such as 'to amount to a deprivation of the applicant's right to a fair trial.'" *Id.* (quoting *Brennan,* 764 A.2d at 171). This is satisfied only by a demonstration, to a reasonable probability, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

## III

### Discussion

On appeal, applicant contends "that the hearing justice misconceived or overlooked evidence in determining that there was not a reasonable probability that, but for trial counsel's unprofessional errors, the result of his trial would have been different." The applicant argues that Sheila's testimony that she did not see him with a handgun "would have brought the evidence at the trial to such a point where three witnesses[,] in addition to [applicant,] would have come forward and testified that they did not see * * * a gun and * * * that this additional crucial evidence would have caused the jury to find reasonable doubt." We disagree.

 Rather, we concur with the hearing justice that applicant's ineffective assistance claim was groundless in that he failed to set forth any evidence suggesting that he was prejudiced by his trial counsel's alleged deficiencies. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 (stating that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, * * * that course should be followed"). The hearing justice properly focused her determination on Sheila's actual deposition testimony and declined applicant's invitation to engage in the purely speculative task of considering what Sheila's testimony might have been if she had been interviewed six years earlier, when her memory of the incident in question was fresh. *See Brown v. State,* 964 A.2d 516, 531 (R.I.2009) (holding that it was error for a hearing justice to speculate "about the importance and assumed impact" of evidence that never was produced). The hearing justice qualified Sheila as a witness who "basically ha[d] little to offer," as she "recall[ed] very little other than that" the dog had been struck, but had not been injured. Further, she found that Sheila "really [did not] seem to have any recollection about the incident whatsoever involving the gun." Moreover, the hearing justice considered the trial justice's credibility determinations, made on applicant's motion for a new trial, that Volpe's unequivocal testimony that applicant had pointed a gun at his head was credible, that Volpe's testimony was corroborated by Ivan's testimony that he witnessed applicant holding a dark object in his hand, and that Barbosa's and Ares's testimonies lacked credibility. After considering Sheila's deposition testimony and the trial justice's findings, the hearing justice ultimately concluded that Sheila's testimony, "if it had been offered consistent with her deposition, would not have, in all reasonable probability, altered the outcome [of the trial]."

In light of our deferential review, we are satisfied that the hearing justice made adequate findings of fact and did not overlook or misconceive material evidence. *See Larngar v. Wall,* 918 A.2d 850, 857 (R.I.2007) (noting "the required degree of deference * * * [that must be accorded] to the hearing justice's findings of fact at the postconviction-relief hearing"). Therefore,

we are convinced, even assuming any deficiency on the part of the applicant's trial counsel, that the applicant has failed to prove to a reasonable probability that he was prejudiced by his trial counsel's purported deficiencies. *See Lynch v. State*, 13 A.3d 603, 606 (R.I.2011) (holding, after considering the trial justice's credibility determinations, that the trial justice did not err in concluding that counsel's failure to cross-examine a witness did not affect the outcome of the proceeding). Accordingly, we affirm the hearing justice's denial of Barbosa's application for postconviction relief.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record of the case shall be remanded to the Superior Court.