**Supreme Court**

No. 2015-92-C.A.

(P2/13-3694AG)

State                             :

v.                             :

Christian Rosado.                             :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                :

v.               :

Christian Rosado.         :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The defendant, Christian Rosado, appeals from a judgment of conviction on two separate counts of assault with a dangerous weapon, to wit, a firearm. The defendant maintains that the hearing justice erred in denying his motion for a mistrial based on what he perceived to have been the state's discovery violation. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Procedural History**

This case involves a shooting that occurred in the City of Woonsocket, which left Ikey Wilson with severe injury to his stomach and required the amputation of his right leg. Three witnesses—Wilson, Jalisa Collins, and Travis Reeves—identified defendant as one of the three perpetrators of the March 30, 2013, shooting. On December 11, 2013, a criminal information was filed, charging defendant with assaulting Wilson with a dangerous weapon, to wit, a firearm,

in violation of G.L. 1956 § 11-5-2[1] (count 1), assaulting Collins with a dangerous weapon, to wit, a firearm, in violation of § 11-5-2 (count 2), and using a firearm while in the commission of a crime of violence, resulting in injury to Wilson, in violation of G.L. 1956 § 11-47-3.2(a) (count 3).[2]

On September 15, 2014, the case proceeded to trial. At trial, Wilson was the first witness to testify for the state. He testified that, on the evening of March 30, 2013, Reeves, whom he considered a friend, entered Wilson's residence wanting Wilson "to go to the liquor store[] because [Reeves] didn't have [an] ID." Wilson testified that at that time he resided on Arnold Street in Woonsocket with his fiancée, Collins, and two of his children. Wilson testified that although Collins "was actually going to go to the liquor store," he decided that he did not want her "going out at that time of night by herself," because he "[had] got[ten] into a couple of incidents with [defendant]." He testified that he had known defendant for "probably a little longer" than six to seven months at that time. Wilson further testified that they had had a friendly relationship, but that he had a falling out with defendant about "a month or two" prior to March 30, 2013, when defendant, along with about five other individuals, approached Wilson as he was walking his son to school. Wilson confirmed that he had also had other confrontations with defendant prior to that day.

Returning to the events of March 30, Wilson testified that he walked to the liquor store with Collins and Reeves and that Collins entered the store to purchase alcohol while he and Reeves waited outside. Wilson said that, on their walk back to his apartment, he saw defendant

---

[1] General Laws 1956 § 11-5-2(a) provides, in relevant part, that "[e]very person who shall make an assault * * * with a dangerous weapon * * * shall be punished by imprisonment for not more than twenty (20) years."
[2] General Laws 1956 § 11-47-3.2(a) prohibits any person from "us[ing] a firearm while committing or attempting to commit a crime of violence."

and approached him in an attempt to end their ongoing dispute. According to Wilson, defendant then "took off" while holding a phone to his ear. Wilson testified that the three then continued to walk home, having to cross a bridge on their way. Once they were at the bridge, he saw defendant "pull [a gun], cock it, and * * * fire[] [it]." Wilson further testified that he saw a total of three individuals that night involved in the shooting—one who stood next to defendant and another who stood nearby. Wilson identified the two individuals accompanying defendant as Smoke and City.[3] Wilson also testified that, although he had not personally known Smoke and City, he had seen them with defendant during the previous "incident when [he] was walking [his] son from school." Wilson testified that he recognized Smoke and City because defendant was "always with them."

Wilson further testified that, on the night of the shooting, before hearing the gun cock and attempting to flee in response, he was asked by City, "did you rob my boy[?]"—and Wilson responded that he had not. Wilson testified that at that time both City and defendant had a gun in their hands. Wilson testified that he "ran straight * * * to go toward [his] house over th[e] bridge * * * and then * * * when [he] turned around" the gun fired. Although he could not be certain, Wilson believed he had made it to the end of the bridge before being shot. He testified that he then observed defendant, Smoke, and City "just run off" and that he remembered "[waking] up in the hospital." Wilson described his injuries, which included the loss of his right leg and injury to his stomach, and he testified that he spent roughly four months in the hospital and two months in rehabilitation.

On cross-examination, Wilson conceded that, in his initial interview on May 30, 2013 with Lieutenant Mark Cabral of the Woonsocket Police Department, he had not disclosed the

---

[3] These were their nicknames. Although Smoke was later identified as Joshua Rojas, it does not appear that City has ever been identified.

- 3 -

prior school incident, but believed that he likely did not remember the incident at that time because he had just recovered from a coma. On redirect, Wilson clarified that he had, however, disclosed the prior school incident in an April 2014 meeting with Lt. Cabral and the prosecutor in this case. Wilson maintained that, in the April 2014 meeting, he had also disclosed that, during this previous incident, defendant had been accompanied by five or six individuals.[4]

On the following morning of trial, defendant moved for a mistrial "based upon * * * Wilson's answers to certain questions" on the previous day. The defendant explained to the trial justice that he had been notified by the state shortly before the trial began that "Wilson would testify that when [defendant] confronted [Wilson] at the school where [Wilson's] son was, that [defendant] had five to six people with him as part of a group to confront * * * Wilson * * *." However, defendant pointed out that at trial Wilson went a step further and testified that he could identify Smoke and City as the two involved in the shooting with defendant because they had been together at the previous school incident. The defendant maintained that he had not been informed by the state as to any testimony regarding Smoke and City's presence at the previous incident. The defendant argued to the trial justice that this evidence was prejudicial because "it indicate[d] [he] had contact with [Smoke and City], and that they had some hard feelings as well toward * * * Wilson." The defendant argued that, had this information been disclosed to him prior to trial, "there would have been more efforts to locate and try to talk to Smoke, or to find the identity of City, or to follow through with this information to try to either rebut it or uncover further details for [the defense] to use on cross-examination." He claimed that the information should have been disclosed prior to trial, but he acknowledged that because the state was also

---

[4] The state represented to the trial justice that it was not informed that the prior incident involved five to six other individuals until the morning of the trial and, notably, defendant does not dispute this representation.

unaware of Wilson's account, the disclosure was not possible. The defendant argued to the trial justice that a cautionary instruction would not suffice and that the trial justice should grant his motion for a mistrial.

In response, the state requested that the trial justice deny defendant's motion. The state highlighted that it also had not had the information that Wilson had allegedly disclosed to the police prior to Wilson's actual trial testimony. The state pointed out that Wilson was at times combative on the stand and that he was "certainly * * * impeached on many, many, many inconsistencies," but that these things went to his credibility and did not warrant a mistrial. The state also argued that, "if there was going to be an investigation into City and Smoke, * * * it would have been as to their roles into the shooting itself" and that it did not "quite understand why * * * defendant's efforts to investigate the roles of City and Smoke would be redoubled just by the fact that they may have been present at a confrontation * * * several months[] prior to the night of the shooting."

After hearing argument from both sides, the trial justice denied defendant's motion for a mistrial and, in so doing, found that he "[did not] see anything unduly prejudicial * * * relative to the comment that * * * Wilson made about an incident at the school some five months prior to the incident * * * when he got shot." The trial justice noted that Wilson's first transcribed interview, conducted on May 30, 2013, and almost 150 pages long, "[was] replete with references to * * * Smoke and City." The trial justice, therefore, found that the defense certainly knew about Smoke and City and that the new testimony had no "prejudicial effect on the case or the defense whatsoever."

Following the trial justice's denial of the motion for a mistrial, the trial continued and both Collins and Reeves testified about details that they recalled from the March 2013 shooting.

Additionally, two officers of the Woonsocket Police Department, Jason Berthellette and Irwin Harris, testified about their involvement in the case—from their observations upon arriving at the crime scene to their involvement in the investigation. Following the close of the state's case, the defense called Lt. Cabral to testify. Lieutenant Cabral was the "case agent" responsible for overseeing this case. He testified that on no occasion had Wilson disclosed to him that defendant had other individuals with him during the prior school incident, nor did Wilson disclose the identities of any of the other individuals involved.

At the conclusion of the trial, on September 22, 2014, the jury returned a guilty verdict as to counts 1 and 2, and acquitted defendant as to count 3. On November 24, 2014, defendant was sentenced to a total of twenty years to serve; fifteen years on count 1 and five years to serve on count 2, consecutively, with fifteen years suspended on count 2. A final judgment of conviction was entered, and defendant filed a notice of appeal.[5]

## II

### Standard of Review

It is well settled that "a trial justice's decision on a motion to pass the case is addressed to the sound discretion of the trial justice, and this Court will not disturb the ruling on such a motion absent an abuse of discretion."[6] State v. Tully, 110 A.3d 1181, 1190-91 (R.I. 2015) (quoting State v. Cipriano, 21 A.3d 408, 428 (R.I. 2011)). "We give great deference to the trial justice in this regard because he or she 'has a front-row seat at the trial and is in the best position

---

[5] The defendant filed a notice of appeal on November 26, 2014, before final judgment entered on December 1, 2014. However, we treat the notice of appeal as timely. See Soares v. Langlois, 934 A.2d 806, 808 n.1 (R.I. 2007).

[6] "In Rhode Island, the terms 'motion to pass the case' and 'motion for a mistrial' are synonymous." Roma v. Moreira, 126 A.3d 447, 449 n.3 (R.I. 2015) (quoting State v. Robat, 49 A.3d 58, 83 n.28 (R.I. 2012)).

to determine whether a defendant has been unfairly prejudiced.'" Id. at 1191 (quoting State v. Oliveira, 882 A.2d 1097, 1127 (R.I. 2005)).

## III

### Discussion

On appeal, defendant argues that the trial justice's failure to grant a mistrial in light of a discovery violation infringed his rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution and article 1, section 10 of the Rhode Island Constitution. The defendant further maintains that he was "totally unaware that evidence of the prior altercation between [Wilson] and * * * defendant existed prior to trial." He argues that he was denied the opportunity "to investigate the prior incident and determine what, if anything, actually occurred." The defendant concedes that the state's failure to disclose was not intentional; however, he maintains that "there was a disclosure of highly relevant evidence mid-trial and the [c]ourt should have granted * * * defendant a mistrial and allowed him to * * * investigate that matter."

"When ruling on a motion to pass, the trial justice must assess the prejudicial impact of the statement in question on the jury and 'determine whether the evidence was of such a nature as to cause the jurors to become so inflamed that their attention was distracted from the issues submitted to them.'" Cipriano, 21 A.3d at 428 (quoting State v. Brown, 619 A.2d 828, 831 (R.I. 1993)). "The trial justice makes this determination by examining the witness's statement or remark in its factual context." State v. Werner, 830 A.2d 1107, 1113 (R.I. 2003). "Moreover, '[w]e previously have held that even prejudicial remarks do not necessarily require the granting of a motion to pass.'" Roma v. Moreira, 126 A.3d 447, 449 (R.I. 2015) (quoting State v. Alston, 47 A.3d 234, 250-51 (R.I. 2012)). "Generally, the declaration of a mistrial is inappropriate if a

less drastic sanction, such as a continuance, would effectively serve the same purpose." State v. Chalk, 816 A.2d 413, 420 (R.I. 2002).

Rule 16(h) of the Superior Court Rules of Criminal Procedure directs that:

> "If, subsequent to compliance with a request for discovery or with an order issued pursuant to this rule, and prior to or during trial, a party discovers additional material previously requested which is subject to discovery or inspection under this rule, he or she shall promptly notify the other party of the existence thereof."

It is well settled that "Rule 16 requires that discovery be made in a timely manner * * * in order that defense counsel may marshal the information contained in the discovery material in an orderly manner." State v. Huffman, 68 A.3d 558, 568-69 (R.I. 2013) (quoting State v. Simpson, 595 A.2d 803, 807 (R.I. 1991)). "A trial justice considering an alleged discovery violation pursuant to Rule 16 * * * should examine four factors: (1) the reason for the nondisclosure; (2) the prejudice to the other party; (3) whether or not a continuance can rectify any such prejudice; and (4) any other relevant factors." State v. Marte, 92 A.3d 148, 151 (R.I. 2014) (quoting State v. Grant, 946 A.2d 818, 828 (R.I. 2008)).

At the outset, it is important to note that, although defendant argues to this Court that a Rule 16 violation occurred because he was "totally unaware that evidence of the prior altercation between [Wilson] and * * * defendant existed prior to trial," the argument that he made before the trial justice differed in a significant way from the argument he makes before us. Before the trial justice, defense counsel argued that a mistrial was appropriate because the defense learned for the first time shortly before Wilson took the stand that "when [defendant] confronted him at the school where [his] son was, that [defendant] had five to six people with him as part of a group to confront * * * Wilson * * *." (Emphasis added.) In his motion for a mistrial, defendant also relied on Wilson's on-the-stand revelation that two of the six people accompanying

defendant during this prior incident were Smoke and City. Because defendant did not raise any challenge to the admission of testimony regarding the existence of a prior altercation altogether, but instead relied on the more specific information regarding who was present during the altercation, nor did he raise the constitutional arguments he now presents to this Court, we limit our review to the issues that were properly raised before the trial justice.[7] See State v. Ford, 56 A.3d 463, 470 (R.I. 2012) ("[a]s this Court has made clear, the 'raise-or-waive' rule precludes a litigant from arguing an issue on appeal that has not been articulated at trial") (quoting State v. Brown, 9 A.3d 1240, 1245 (R.I. 2010)).

Accordingly, the issue before this Court is whether the trial justice was clearly erroneous in finding that the testimony disclosed by the state to defendant just moments prior to the commencement of trial, i.e., that Wilson would testify that five to six individuals were present during the prior school incident, and the information that was disclosed for the first time during Wilson's direct examination, i.e., that Smoke and City were among those present, were not prejudicial and did not warrant a mistrial.

After reviewing the trial record and transcripts, it is our opinion that the trial justice did not abuse his discretion in denying defendant's motion for a mistrial. Importantly, it is undisputed that any nondisclosure was unintentional. Additionally, the trial justice was in the best position to determine if the nondisclosure caused any prejudice to defendant, and we see no reason to disturb his finding that here defendant was not prejudiced. See Tully, 110 A.3d at 1191.

---

[7] The defense counsel's acknowledgment in his motion for a mistrial that the new evidence admitted at trial was not known to the state prior to Wilson's testimony, and the state's representation that it learned about the previous school incident in an April 2014 meeting at Wilson's home—roughly six months before Wilson testified—indicates that the new evidence defense counsel was referring to in his motion for a mistrial was Wilson's testimony that additional individuals were present at the prior school incident, and his identification of Smoke and City as part of that group.

References to Smoke and City were replete throughout Wilson's initial statement to the police as accomplices to the shooting for which defendant alone was charged. Despite this, defendant did not attempt to contact Smoke or City, but argued that somehow evidence of their presence in a previous altercation that occurred months prior to the actual shooting would have created the need to contact these individuals. This argument is unavailing. If defendant wanted to investigate Smoke or City's involvement further, he could have asked the trial justice for a continuance, but instead he insisted that a mistrial was the only proper remedy without articulating why a continuance would have been insufficient. See Chalk, 816 A.2d at 420 (affirming denial of a motion for a mistrial where "[t]he defendant ha[d] not articulated any reason why measures less severe than a mistrial would have been insufficient").

Moreover, defense counsel questioned Wilson extensively regarding the inconsistencies between his statements to the police and his trial testimony. On one occasion during cross-examination, after attempting to highlight that Wilson had never previously disclosed the presence of other individuals at the school incident, defense counsel directly asked Wilson if he had fabricated the detail of the presence of other individuals to "make the case stronger," and Wilson denied doing so. The inconsistencies between Wilson's trial testimony and his previous statements to the police went to his credibility and were also highlighted both in cross-examination and during the defendant's closing statement.[8] It is our opinion that the trial justice

---

[8] In its closing statement, the defense highlighted the inconsistencies in the statements by the state's witnesses, including the fact that Lt. Cabral corroborated that Wilson had not disclosed to him that a group of people were present at the prior school incident. The defense also characterized Wilson's identification of Smoke and City as two of the individuals in the group as an "embellishment." During closing arguments, the state's only reference to the prior incident was as follows:

> "[Wilson] told you, I put in my quotes on my pad that they had
> a strong falling out, and that had happened some months earlier.
> He went on to describe to you there was a confrontation when

- 10 -

was in the best position to weigh the harm caused by Wilson's new revelations, and we find no clear error in his finding that Wilson's testimony was not prejudicial and did not warrant a mistrial.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.

---

[Wilson] was walking his son home from school. And Jalisa even told you, she said, Yeah, [defendant] went to my son's school. She told you that. Now, who was with him, and what actually happened? You know, we don't know the details of that, but we know, we know there was bad blood between * * * defendant * * * and * * * Wilson."



**TITLE OF CASE:**          State v. Christian Rosado.

**CASE NO:**          No. 2015-92-C.A.
(P2/13-3694AG)

**COURT:**          Supreme Court

**DATE OPINION FILED:**          June 16, 2016

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**          Providence County Superior Court

**JUDGE FROM LOWER COURT**:

          Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

          For State:   Jane M. McSoley
                       Department of Attorney General

          For Defendant:  Matthew S. Dawson, Esq.