**Supreme Court**

No. 2017-220-C.A.

(K1/15-742A)

| State | : |
| --- | --- |
| v. | : |
| Henry G. Bozzo. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                                :

v.                                :

Henry G. Bozzo.                    :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** The defendant, Henry Bozzo, appeals from a judgment of conviction following a jury verdict of guilty on one count of first-degree child molestation sexual assault, in violation of G.L. 1956 § 11-37-8.1. The trial justice sentenced the defendant to forty-five years at the Adult Correctional Institutions, with eighteen years to serve and the balance suspended, with probation. The defendant timely appealed. For the reasons set forth in this opinion, we vacate the judgment of conviction and remand the case to the Superior Court for a new trial.

### Facts and Travel

In August 2015, the complainant, Veronica,[1] was seven years old. Her parents, Antonio Pina (Pina) and Kathryn Johnson (Kathryn), who never married, lived separately. On Tuesdays and Thursdays, Veronica stayed with her father, who lived across the street from defendant and his common-law wife, Denise Jones (Jones).

---

[1] We refer to the complainant in this case by a pseudonym. Additionally, because the complainant's mother and grandmother share the same last name, we will refer to them by their first names; we intend no disrespect by doing so.

The testimony at trial revealed that Pina and defendant were friends and shared a common interest in automobiles. Veronica testified that she also thought of defendant as her friend, and that defendant would hug her every time he saw her. Pina stated that Veronica would often walk across the street to defendant's house, and, whenever Veronica saw defendant or Jones, "she would run over to them" and "give them a hug and a kiss on the cheek, just being friendly."

On August 4, 2015, Veronica and her father were playing in Pina's front yard when Jones stopped and gave Veronica a flower. Veronica and Pina then walked across the street to talk to defendant, who was standing in his yard. Veronica hugged defendant. The defendant then sat on a pile of shingles, and Veronica sat on his lap. According to Veronica, she sat on defendant's left leg with her legs inside defendant's legs and defendant's left hand against her back. When her father went to look at defendant's Chevrolet El Camino, which was parked in his driveway, out of defendant's sight, defendant put his right hand under Veronica's skirt and touched her vagina, over her underwear. Veronica testified that defendant "tapped" her vagina and then she felt his finger go inside of her. Veronica testified that she was scared and uncomfortable, and she devised an excuse to get off defendant's lap. According to Veronica, defendant smiled at her but said nothing.

Veronica did not immediately tell Pina about the assault because she thought he would be upset. Later that evening, Veronica told her grandmother, Helene Johnson (Helene), about the incident because it was easier to talk to her grandmother and Veronica did not think that the disclosure would upset her. Helene called Kathryn at work and told her what happened. Kathryn left work and went to Helene's house to talk to Veronica—who, according to Kathryn, appeared scared and confused. Kathryn did not have an exhaustive discussion with Veronica at

that time, because she was frightened and uncertain about what to say to her daughter. Kathryn did not report the assault to the police. She called Pina, but when she began to explain what happened, he "flipped out on [her,]" and she was unable to tell him everything that Veronica had revealed to her.

The next day, Veronica went to Pina's house and told him about the assault. Pina did not call the police, however, "[b]ecause the way I asked [Veronica], she agreed with the way I asked her and to me I took it as it was a mistake. It was an accident." Veronica testified that initially she thought the touching could be an accident, but after meeting with her counselor, she realized that it was not accidental.

In September 2015, about a month after the assault, Pina witnessed a raid at defendant's house by multiple state troopers; he later learned on social media that it was a police investigation into defendant for possession of child pornography. Pina called Kathryn and told her about the raid, and that prompted her to report the assault to the Warwick police.

On November 17, 2015, a grand jury indicted defendant for one count of first-degree child molestation sexual assault, in violation of § 11-37-8.1. The defendant was convicted following a jury trial in October 2016. On January 20, 2017, the trial justice sentenced defendant to forty-five years at the Adult Correctional Institutions, with eighteen years to serve and the balance suspended, with probation. The defendant filed a timely appeal.

## Issues on Appeal

Before this Court, defendant advances four assignments of error. The defendant argues that the trial justice erred: (1) in denying defendant's motion for a mistrial based on a police officer's reference during his testimony to a polygraph examination; (2) in denying defendant's motion for a mistrial based on the prosecutor's comments during closing argument about

defendant's courtroom demeanor at trial; (3) in admitting testimony about the arrest and prosecution of defendant for possession of child pornography; and (4) in failing to safeguard defendant's right to a fair trial based on various claims related to the presence of members of a motorcycle group known as "Bikers Against Child Abuse" (BACA) in the courtroom during trial. We address each contention in turn, and we will provide additional facts and procedural history as necessary.

## Motions to Pass the Case

### Standard of Review

"When ruling on a motion to pass, the trial justice must assess the prejudicial impact of the statement in question on the jury and determine whether the evidence was of such a nature as to cause the jurors to become so inflamed that their attention was distracted from the issues submitted to them." *State v. Lastarza*, 203 A.3d 1159, 1165 (R.I. 2019) (quoting *State v. Cipriano*, 21 A.3d 408, 428 (R.I. 2011)). "The trial justice makes this determination by examining the witness's statement or remark in its factual context." *Id.* (quoting *State v. Werner*, 830 A.2d 1107, 1113 (R.I. 2003)). "Moreover, we previously have held that even prejudicial remarks do not necessarily require the granting of a motion to pass." *Id.* (quoting *Roma v. Moreira*, 126 A.3d 447, 449 (R.I. 2015)).

"[A] trial justice's decision on a motion to pass the case is addressed to the sound discretion of the trial justice, and this Court will not disturb the ruling on such a motion absent an abuse of discretion." *Lastarza*, 203 A.3d at 1165 (quoting *State v. Rosado*, 139 A.3d 419, 423 (R.I. 2016)). "We give great deference to the trial justice in this regard because he or she has a front-row seat at the trial and is in the best position to determine whether a defendant has been unfairly prejudiced." *Id.* (quoting *Rosado*, 139 A.3d at 423).

**Reference to the Polygraph Examination**

Before the facts of this case were known to the Warwick police, defendant was interviewed by the police on two occasions concerning the child pornography investigation. During the second interview at the state police barracks, defendant underwent a polygraph examination. The circumstances of the police interviews and an inadvertent reference to the polygraph examination by a witness at trial are issues in this case.

Before trial, defendant filed a motion *in limine* to preclude evidence of the polygraph examination at trial. During a hearing on that motion, the court recognized that the state had "agreed on the record to * * * redacting out anything that makes reference to a polygraph examination." Indeed, the prosecutor stated: "The state does not intend to introduce any evidence related to the polygraph. I have no issue redacting anything * * * relating to a polygraph or any mention thereof[.]" At trial, however, Detective Kevin Petit, the police officer who had administered the polygraph examination to defendant, referenced the polygraph while testifying on cross-examination. Detective Petit testified that he initially interviewed defendant at his home, and then conducted a follow-up interview at the state police barracks. Defense counsel then asked Det. Petit how long the follow-up interview lasted, and the following colloquy ensued:

> "[DEFENSE COUNSEL]: Do you know how long that interview took place?
> "[DETECTIVE PETIT]: A couple of [*sic*] three hours I believe. In the interim there was a polygraph exam given so I didn't have—
> "[DEFENSE COUNSEL]: Objection.
> "THE COURT: Sustained. The jury will disregard."

Defense counsel requested a sidebar and immediately moved to pass the case, arguing that the polygraph reference warranted a mistrial, and that a curative instruction would not be sufficient to cure the prejudice caused by its reference. The state argued that a curative instruction would

be sufficient because Det. Petit did not reveal the results of the polygraph examination, but only that one had been administered to defendant.

The trial justice declined to grant a mistrial, stating:

> "Counsel, the [c]ourt is going to decline your motion to pass. You have preserved the record at this point. The [c]ourt will at some point give a curative instruction and has instructed the jury to disregard the answer."

The defendant did not object to the failure to give an immediate cautionary instruction, nor did he proffer any suggestions about the substance of the instruction. After the cross-examination, redirect, and recross of Det. Petit concluded, the trial justice gave the following curative instruction to the jury:

> "[A]t the very beginning of the trial I told you that when the [c]ourt has an objection and will overrule or sustain it. When I overrule an objection, it's very easy. You can consider the answer as evidence. If I sustain an objection to a question that was not answered, you're never hearing the answer so there is no evidence to consider, and, as I told you, you can't read into the question itself. There have been times during this witness' testimony and others where the witness said something, there was an objection afterwards and I sustained the objection. I want to remind the jury again, as I did initially, you cannot consider either the question or the answer given by the witness. It cannot have any weight or any evidentiary value one way or another. You can't make any inferences as to what you heard. You must and this jury must completely disregard any answer to a question that was sustained by the [c]ourt even if an answer was given, and you heard that numerous times over the course of the testimony."

The defendant did not object to the timing or adequacy of the instruction or otherwise ask the court to provide additional language.

Because we are vacating the judgment of conviction on other grounds, we decline to reach these questions regarding the polygraph reference.

## The Prosecutor's Closing Argument

During closing argument, the prosecutor stated:

> "This man, Henry Bozzo, molested that young girl. It wasn't a mistake. He did it intentionally. *He stared at her as she was walking out of the courtroom. He stared her down. I saw it.* It was right there. That is no mistake there." (Emphasis added.)

The defendant immediately objected. The trial justice reserved ruling on the objection. The prosecutor continued: "You know there is no mistake there. He knew what he was doing." After the prosecutor concluded his closing argument, the trial justice called for a sidebar, and defendant moved to pass the case, arguing that the prosecutor was "basically testifying[,]" and making an "absolutely a hundred percent improper argument." The defendant contended that the prosecutor improperly referred to that which he had personally observed, rather than to facts that were in the trial record. The defendant also argued that the prejudice caused by the statements was so significant that it could not be cured by an instruction. The state responded that the prosecutor's remarks stemmed from defendant's conduct and demeanor when Veronica left the stand—all of which occurred in the presence of the jury. The state further argued that, even if the remarks were inappropriate: "It's only argument. I think the [c]ourt can instruct on that. I think a curative instruction would be fine. The [c]ourt is going to give an instruction that it's only an argument. It's not to be considered as evidence."

The trial justice made the following ruling:

> "First of all, the [c]ourt finds that it was improper. The jury is instructed from the beginning they can only consider answers to questions from the witness stand and the exhibits. They cannot consider anything else. Clearly, the prosecutor bringing up what he observed or his observations is improper. The [c]ourt declines to grant a mistrial. The [c]ourt will give a curative instruction to the jury. The jury is aware closing arguments are not evidence. The [c]ourt will instruct the jury to disregard. The [c]ourt disagrees with defense counsel there is no other way to cure this.

The [c]ourt has dealt with this exact issue and the [c]ourt will give a curative instruction."

The trial justice proceeded to give the following curative instruction to the jury:

"Members of the jury, before we take a brief break and come back and give you the instructions, there was a comment made by the prosecutor during the closing argument that dealt with an observation of staring down or something to that [e]ffect. You know what I'm referring to. First of all, as I told you before the closings are not evidence. The defense closing is not evidence and the [s]tate's is not evidence. It's what you heard from the witness stand. I have also told you that the evidence is what you heard from the witness stand and the statements. It's not nothing [*sic*] else that occurs in the courtroom itself. So I am going to instruct you specifically that you must disregard that statement. Now as I said, you wouldn't be considering it as evidence anyway because the closing is not evidence. But I am specifically going to instruct you that you must disregard that statement. It's up to you, the jury, in terms of the witnesses, the evidence, the weight that you give that and so I give you that instruction."

The defendant did not object to the instruction.

**Analysis**

On appeal, defendant submits that the trial justice abused his discretion in failing to pass the case after the prosecutor's statements during closing argument about defendant's courtroom demeanor and behavior toward Veronica. The defendant argues that there is no evidence in the record to support the prosecutor's representation that defendant glared at Veronica when she left the witness stand, and that the prosecutor inserted his personal observations into the record, which deprived defendant of his right to have his guilt or innocence determined solely on the evidence presented at trial. Moreover, defendant argues that the instruction that was given could not cure the prejudice that this remark generated. We agree.

A criminal trial is a search for the truth. *State v. Pacheco*, 161 A.3d 1166, 1177 (R.I. 2017). "The purpose of closing argument is 'to sharpen and clarify the issues for resolution by

the trier of fact in a criminal case.'" *State v. Boillard*, 789 A.2d 881, 885 (R.I. 2002) (quoting *Herring v. New York*, 422 U.S. 853, 862 (1975)). "Only after all the evidence has been presented are counsel for the parties in a position to present their respective versions of the case as a whole." *Id.* "Only then can they argue the inferences to be drawn from all the testimony and point out the weaknesses of their adversaries' positions." *Id.* (punctuation omitted) (quoting *Herring*, 422 U.S. at 862).

"[A] prosecutor is given considerable latitude in closing argument, as long as the statements pertain only to the evidence presented and represent reasonable inferences from the record." *Lastarza*, 203 A.3d at 1166 (quoting *Boillard*, 789 A.2d at 885). "While there is no formula in law which precisely delineates the proper bounds of a prosecutor's argument, prejudice obviously inheres if the remarks are totally extraneous to the issues in the case and tend to inflame and arouse the passions of the jury." *Id.* (brackets omitted) (quoting *Boillard*, 789 A.2d at 885). "The probable effect of the prosecutorial statements on the outcome of the case must be evaluated by examining the remarks in the context in which they were made." *Id.* (quoting *Boillard*, 789 A.2d at 885).

On numerous occasions, this Court has been called upon to examine purportedly improper statements by a prosecutor during closing argument. *See, e.g.*, *Lastarza*, 203 A.3d at 1165; *State v. Clements*, 83 A.3d 553, 561 (R.I. 2014); *State v. Vieira*, 38 A.3d 18, 21 (R.I. 2012); *Boillard*, 789 A.2d at 884. In *Boillard*, the defendant was convicted of first-degree and second-degree child molestation. *Boillard*, 789 A.2d at 882. One of the victims testified that she had witnessed the defendant's daughter performing a sexual act on the defendant. *Id.* at 884. The victim also testified that, when she confronted the defendant's daughter about what she had seen and whether it happened often, the daughter responded, "only when I see my [d]ad." *Id.* During

the daughter's testimony, however, she denied ever having sexual contact with her father. *Id.* In closing argument, the prosecutor specifically addressed the daughter's testimony and suggested that she may have "repressed" the memories or did not remember them. *Id.* The defendant objected, and the trial justice overruled the objection. *Id.* The prosecutor proceeded to discuss the inconsistencies in the testimony of the victim and the defendant's daughter. *Id.* at 884-85. Once again, the defendant objected, and the trial justice overruled the objection. *Id.* at 885. We held that the trial justice did not err in overruling the defendant's objections because the prosecutor's statements suggesting possible explanations for the obvious inconsistencies in the testimony of the witnesses, "though conjectural, were within the array of reasonable inferences that could be drawn from the facts presented at trial, and they were neither extraneous nor inflammatory." *Id.* at 885-86.

More recently, in *Lastarza*, we examined the issue of allegedly improper comments made by the prosecutor during closing argument. *Lastarza*, 203 A.3d at 1165. There, the prosecutor made several statements during closing argument related to the defendant's acts of dishonesty and criminal history; the prosecutor called the defendant a "thief," a "career thief," a "scam artist," and a "con artist." *Id.* This Court concluded that the statements did not warrant a mistrial because they "were based in large part upon the evidence and testimony adduced at trial." *Id.* In that case, the defendant took the stand at trial, placing his credibility before the jury, and volunteered information about his past crimes and acts of dishonesty. *Id.* at 1166. Thus, we determined that the trial justice did not err in denying the defendant's motion to pass the case because the prosecutor's statements were not "totally extraneous to the issues in the case," and because the "remarks specifically addressed defendant's performance on the witness stand[.]" *Id.* (brackets omitted) (quoting *Boillard*, 789 A.2d at 885).

In both *Boillard* and *Lastarza*, the prosecutor's remarks were directed to information and facts that had been revealed on the witness stand in the presence of the jury. The prosecutor's statements in the case at bar diverge from our holdings in the *Boillard* line of cases because they were not based on the evidence or testimony at trial. Indeed, the prosecutor's remarks about defendant's demeanor have no support in the record, because defendant did not place his credibility at issue by testifying at trial. *Cf. Lastarza*, 203 A.3d at 1166 (where the prosecutor's remarks "specifically addressed the defendant's performance on the witness stand"). Nor did defendant have an opportunity to refute the prosecutor's allegation that defendant "stared her down" as she was walking out of the courtroom. Moreover, the prosecutor's statements were not "within the array of reasonable inferences that could be drawn from the facts presented at trial"; rather, the statements were based solely on the prosecutor's own observations. *Boillard*, 789 A.2d at 886. As a result, the prosecutor's statements—which placed the purported conduct of defendant before the jury without any evidentiary support—impacted defendant's Fifth Amendment right not to testify at trial and may have influenced the jury's verdict. Additionally, the context in which the remarks were made is notable because the prosecutor's comments struck at the heart of the defense's theory at trial—that the alleged assault was an accident. The prosecutor pointed to defendant's courtroom demeanor as evidence that defendant's actions were not accidental or mistaken. This is simply not allowed.

We are of the opinion that the prosecutor's statements exceeded the "considerable latitude" he was allowed because his statements were not based on evidence or testimony adduced at trial, were extraneous to the issues in the case, and had the potential for unfair prejudice. *Lastarza*, 203 A.3d at 1166. We are also satisfied that a curative instruction could not

overcome the prejudice in this case. Thus, we conclude that the trial justice erred in denying defendant's motion to pass the case.

## Rule 404(b) Evidence

After the police raid and child pornography investigation, defendant was charged with one count of possession of child pornography. On May 9, 2016, he entered a plea of nolo contendere to that charge and received a four-year suspended sentence.

Before the trial in the present case, defendant filed motions *in limine* to preclude the state from introducing evidence or testimony concerning the child pornography case against defendant in accordance with Rule 403, Rule 404, and Rule 609 of the Rhode Island Rules of Evidence and, further, to preclude the state from introducing the statements made by defendant to Det. Petit in the course of the child pornography investigation. The state countered that statements made by the accused were admissible because they were admissions, and that the child pornography evidence was admissible under Rule 404(b) to establish intent, absence of mistake, and defendant's lewd disposition toward Veronica. The trial justice ruled that defendant's prior conviction of possession of child pornography was admissible to show intent under Rule 404(b), but reserved ruling on the remaining evidence in defendant's motions *in limine*.

The parties thereafter filed a written stipulation concerning defendant's plea of nolo contendere to the possession of child pornography charge. During trial, the trial justice read the stipulation to the jury:

> "So the stipulation is: 'The parties hereby stipulate to the following:
> "'(1.) That on May 9, 2016, Henry Bozzo before a justice of the Superior Court pled nolo contendere to one count of possession of child pornography and was sentenced to four years suspended sentence and four years of probation with specific conditions of the sentence and probation.'

- 12 -

"It also states, 'Agreed to by the parties on 10/26/16,' and it's signed by both the [s]tate and the defense attorneys. Also attached to that stipulation is a document referred to as a judgment of conviction and commitment, which basically just goes through what I read to you here."

The trial justice then instructed the jury to consider the stipulated evidence only for determining the element of intent. The instruction was as follows:

"Now, in certain cases the jury is allowed to hear and consider [evidence] about a prior conviction of the defendant on trial, but I specifically inform you that you cannot use the fact that someone was convicted on a prior occasion as evidence of what we call propensity, and what that basically means is for the jury to say because someone did something one time, they m[u]st have done it this time as well. So you cannot use it for that purpose. However, the law does allow the jury to use it to make certain determinations in the case. In this case the jury is going to need to determine what is referred to as intent. Intent to commit a crime or intent to commit the acts charged. The jury is permitted to take this into consideration when making their determination in terms of intent[.]"

Later at trial, Det. Petit gave lengthy testimony about the child pornography investigation, including the statements made by defendant and the nature of the evidence obtained in the course of the investigation. Detective Petit testified that, at the time of the assault on Veronica, he was assigned to the Internet Crimes Against Children Task Force (ICAC), an agency made up of local, state, and federal law-enforcement officers charged with investigating crimes against children. He then described how the ICAC investigates child pornography cases.

At that point, the trial justice called the parties to sidebar. The defendant objected to the admission of any child pornography evidence, stating:

"We want to have excluded the fact of exactly that it was not the nature of a video that was found on Mr. Bozzo's computer. We stipulated to the fact that he admitted to possessing child pornography, but we never said what that child pornography was."

The trial justice disagreed and ruled that the evidence was admissible under Rule 404.

- 13 -

The state proceeded to present detailed and highly prejudicial testimony about this unrelated case. Detective Petit indicated that the ICAC received four tips about a certain IP address that was linked to child pornography, and that they determined that the IP address was linked to defendant, which led to the search of defendant's residence on September 2, 2015.[2] Detective Petit testified that the first interview of defendant occurred at his home after his arrest. Detective Petit then discussed the statements about child pornography made by defendant during that interview. According to Det. Petit, defendant admitted that he was familiar with the child pornography video that led to the tip, which depicted "a little girl in there masturbating[.]" He also testified that defendant admitted that he had watched videos of preteen girls having sex and that he "viewed [child pornography] everyday[.]" When Det. Petit asked him if child pornography was sexually gratifying, defendant responded: "It's not like I'm masturbating to it every time." Detective Petit testified that defendant informed him that he frequented illicit websites containing graphic videos and images of minors, and that defendant admitted that he "searches whatever he can for [child pornography]."

---

[2] The prosecutor and Det. Petit engaged in the following colloquy:

> "[PROSECUTOR]: What lead you to speak to Mr. Bozzo?
> "[DET. PETIT]: One of the cyber tips that was concerning that involved a toddler female approximately four years old that was described as a file named P.T.H.C., which stands for preteen hard core. Typically those images are illegal.
> "* * *
> "[PROSECUTOR]: You received this image or was it a video?
> "[DET. PETIT]: It was a video.
> "[PROSECUTOR]: Did you talk to Henry about it?
> "[DET. PETIT]: I did.
> "[PROSECUTOR]: And this was a video that led you to sit down and talk to him?
> "[DET. PETIT]: That's correct."

At that point, the trial justice provided another cautionary instruction to the jury, and the prosecutor then continued his direct examination of Det. Petit, who proceeded to describe his second interview with defendant. Detective Petit testified that, during that interview, defendant admitted to downloading about a hundred videos of child pornography on his computer and that he had "a lot of fantasies" about those videos. Detective Petit later confirmed the existence of those videos on defendant's hard drive, including more than one video of girls under the age of ten. According to Det. Petit, defendant stated that he was attracted to girls between seven and fifteen years old.

Although these interviews took place before Veronica's father had reported the incident to law enforcement, Det. Petit testified that defendant talked about Veronica during the second meeting. According to Det. Petit, defendant stated that Veronica "was a beautiful girl[,]" that he was attracted to her, and that he enjoyed when Veronica sat on his lap. Detective Petit testified that defendant told him that it was a "look but don't touch thing" with Veronica.

**Standard of Review**

"It is well settled that we review a trial justice's decision admitting or excluding evidence under an abuse of discretion standard." *Clements*, 83 A.3d at 561 (brackets omitted) (quoting *State v. Pona*, 66 A.3d 454, 465 (R.I. 2013)). "Accordingly, 'we will reverse a trial justice's ruling on the admissibility of evidence only where it constitutes a clear abuse of discretion.'" *Id.* (brackets omitted) (quoting *Pona*, 66 A.3d at 465).

**Analysis**

On appeal, defendant argues that the trial justice abused his discretion in admitting the evidence of child pornography pursuant to Rule 403 and Rule 404(b). The defendant argues that the testimony was impermissible evidence of bad character designed to prove propensity and was

so extensive and prejudicial that the evidence of the "actual charge of child molestation seemed like a mere footnote to a pornography prosecution." The defendant also submits that the stipulation to his plea of nolo contendere to the charge of possession of child pornography foreclosed the admission of evidence related to that case under Rule 404(b).

Stipulations of counsel are serious matters.[3] When parties stipulate that an evidentiary fact or facts need not be proved at trial, proof of the underlying circumstances of that fact or facts is generally foreclosed. *See State v. Huy*, 960 A.2d 550, 555 (R.I. 2008). This Court previously has recognized the widely-accepted force of stipulations:

> "When an adverse party is willing to stipulate to the truth of a certain allegation, the party having the burden of proving that allegation is relieved from proving it, that is, a stipulation renders proof unnecessary and * * * prevents an independent examination by a judicial officer or body with respect to the matters stipulated[.]" *Huy*, 960 A.2d at 555 (quoting *Rhode Island Public Telecommunications Authority v. Russell*, 914 A.2d 984, 990 (R.I. 2007)).

A stipulation "entered into with the assent of counsel and their clients, relative to an evidentiary fact or an element of a claim, is conclusive upon the parties and removes the issue from the controversy." *Id.* (quoting *Russell*, 914 A.2d at 990); *see In re McBurney Law Services, Inc.*, 798 A.2d 877, 881-82 (R.I. 2002) (holding that the subject of a stipulation is "no longer a question for consideration by the tribunal").

We have not yet taken a definitive position on the employment of stipulations to preclude the use of other crimes evidence under Rule 404(b). In this case, defendant stipulated to the fact that he had previously entered a plea of nolo contendere to the charge of possession of child pornography, for the purposes of proving intent. During trial, the trial justice read that

---

[3] A stipulation is a "voluntary agreement between opposing parties concerning some relevant point; esp[ecially] an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding[.]" Black's Law Dictionary 1712 (11th ed. 2019).

stipulation to the jury and instructed the jury about the relevance and limited application of the child pornography evidence as it pertained to the element of intent in this case. The stipulation made clear that defendant was not contesting the issue. This evidence therefore had no bearing on the remaining issues in the case. By contrast, the evidence that was admitted about the child pornography case was highly prejudicial and created a real risk of juror confusion. Detective Petit's testimony about the child pornography case came in wholesale and placed before the jury extensive evidence of a separate crime.

We conclude that the trial justice erred in admitting some, but not all, of the evidence pertaining to the child pornography investigation. The stipulation foreclosed evidence of the child pornography investigation and conviction under Rule 404(b), including the task force, the child pornography videos, and defendant's prurient interests.

We draw a distinction, however, with respect to the statements made by defendant to police about Veronica in the course of the child pornography investigation. The defendant's statements to Det. Petit are relevant to this case and admissible for the purpose of proving defendant's intent and lewd disposition toward Veronica. *See State v. McVeigh*, 660 A.2d 269, 273 (R.I. 1995) (holding that, in a sexual assault case, testimony of statements made by the defendant about prior uncharged sexual assaults of the victim were admissible as "relevant, material, and highly probative of defendant's lecherous conduct" toward the victim, and as admissions by the defendant). The prosecutor in this case correctly pointed out that defendant's statements about Veronica are just that—statements by the accused and not prior bad acts.

**Bikers Against Child Abuse**

It was not until after Veronica testified at trial that defense counsel objected to the presence of BACA motorcycle group members in the gallery during her testimony as well as to

the display of their colors on their clothing.  Defense counsel made the following objection on the record, outside the presence of the jury:

> "We would just like to place on the record an objection to the [BACA members] being in here wearing all of their patches and decorative garb that they have sitting on the [s]tate's side, which is directly behind the jury panel, which they have been staring, I believe at the jury.  We believe there may be an intimidation factor.  So we object to them being allowed to wear such materials in the courtroom, just as the [c]ourt would keep anyone from wearing gang material in the courtroom."

The state countered by arguing that the courtroom is open to the public and that the allegation that BACA members were staring at the jury had not been brought to the attention of the state or the court.  The trial justice stated:

> "First of all, *the [c]ourt will note that no objection was raised during the testimony of the witness as far as any type of looks or intimidation.*  The [c]ourt was probably in the best position to see the people that were in the courtroom and did not observe that.
>
> "As far as the garment wear, the [c]ourt certainly has an issue with comparing the jackets and others to a gang.  These individuals were very respectful in the court[room].  They were wearing jackets * * *.  The [c]ourt did not see what patches or others were on what they were wearing.  *Again, the [c]ourt certainly would have expected a sidebar from counsel if something was noted, but certainly counsel has the ability to place anything on the record they so wish.*" (Emphasis added.)

The trial justice declined to take any action with respect to the objection, but offered to give a curative instruction:

> "The [c]ourt is willing if the defendant wishes to give a curative instruction to the jury so they understand that the individuals here were from an organization known as Bikers Against Child Abuse.  Does the defendant wish [for] the [c]ourt to give that curative instruction?"

The defendant declined the trial justice's offer.  No curative instruction was given, and defendant did not move for a mistrial.

The issue of the presence of the BACA members in the courtroom arose again before closing arguments. The parties agreed that the BACA members would not wear vests with various insignia indicating the organization to which they belonged. The trial justice noted that "[a]s far as what [the BACA members] were wearing yesterday in a very real sense that ship has sailed as far as the [c]ourt is concerned." The defendant also objected to the presence of BACA members in the courtroom during closing arguments altogether. The trial justice overruled the objection and permitted the BACA members to remain. The defendant did not object, move for a mistrial, or ask for a curative instruction.

The issue arose for a third time in defendant's motion for a new trial. The defendant argued that he was entitled to a new trial because the presence of BACA members in the courtroom during Veronica's testimony and during closing arguments was so inherently prejudicial that it deprived him of his right to a fair trial. The defendant also took issue with the fact that Veronica wore a BACA vest during her testimony. The trial justice denied the motion and noted that defendant did not object to Veronica wearing a vest herself while she was testifying, nor did he object to the presence of BACA members in the courtroom until after Veronica's testimony.

**Analysis**

On appeal, defendant argues that the trial justice erred in failing to grant a mistrial, provide a curative instruction, or grant a new trial based on Veronica wearing a BACA vest during her testimony and the presence of BACA members in the courtroom during trial and closing arguments. The defendant contends that he was deprived of his right to a fair trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and article 1, section 10 of the Rhode Island constitution.

We need not reach the merits of defendant's BACA-related contentions, because these claims are procedurally infirm. The defendant did not object to the presence of BACA members in the courtroom during Veronica's testimony, nor to Veronica wearing a BACA vest, until after Veronica testified. And defendant declined the trial justice's offer to give a curative instruction to the jury about the presence of the BACA members in the gallery. The defendant did not move for a mistrial, propose an alternative curative instruction, or provide any substantive feedback on the proposed instruction. Because defendant failed to alert the trial justice to these concerns or press a timely objection, those issues were not properly preserved for appellate review. *See State v. Higham*, 865 A.2d 1040, 1047 (R.I. 2004) (holding that the defendant waived any issue concerning the adequacy of the curative instruction because he failed to object to the substance of the instruction after it was given). Additionally, although defendant took issue with the presence of BACA members in the courtroom before closing arguments, he did not object, request a curative instruction, or point to anything untoward by the BACA spectators during closing arguments. That claim is also waived. *State v. Gatone*, 698 A.2d 230, 242 (R.I. 1997) ("Because defendant did not request cautionary instructions from the trial justice or any other remedial action, he is precluded from arguing this issue on appeal.").

Accordingly, we conclude that none of the defendant's BACA-related claims are properly before the Court.

**Conclusion**

For the reasons set forth in this opinion, we vacate the judgment of conviction and remand the case to the Superior Court for a new trial.

STATE OF RHODE ISLAND AND    PROVIDENCE PLANTATIONS

**SUPREME COURT – CLERK'S OFFICE**

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | State v. Henry G. Bozzo. |
| **Case Number** | No. 2017-220-C.A. <br> (K1/15-742A) |
| **Date Opinion Filed** | January 15, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For State: <br><br> Christopher R. Bush <br> Department of Attorney General <br> For Defendant: <br><br> Lara E. Montecalvo <br> Office of the Public Defender |